## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| DAPHNE RICHARD, ET AL. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:20-CV-00734-BKS-DJS |
| | ) | |
| GLENS FALLS NATIONAL BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## GLENS FALLS NATIONAL BANK'S:  (1) MOTION TO DISMISS; AND
## (2) MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT

Defendant Glens Falls National Bank and Trust Company respectfully submits this memorandum in support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the entire Complaint filed by Plaintiff Daphne Richard and its motion to strike pursuant to Federal Rule of Civil Procedure 12(f).  For the reasons herein, this Court should (1) dismiss Plaintiff's Complaint in its entirety with prejudice because its fails to state a claim upon which relief can be granted; and/or (2) strike certain immaterial and impertinent allegations therein.

Dated: September 30, 2020

Respectfully Submitted,

**THOMPSON COBURN LLP**

By: /s/ Lukasz Sosnicki
    Lukasz Sosnicki
    2029 Century Park East, 19th Floor
    Los Angeles, CA 90067
    (310) 282-2538
    (310) 282-2501 (fax)
    lsosnicki@thompsoncoburn.com

    *Attorneys for Defendant Glens Falls*
    *National Bank*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 4

    A.    Glens Falls' Account Agreement States that Overdraft or NSF Fees Will Be Assessed When "Initiated" (and Not "Settled" or "Processed") Transactions Exceed the Money in the Account........................................................ 4

    B.    Glens Falls' Account Agreement Does Not Limit NSF Fees To One Fee Regardless of How Many Times a Transaction Is Presented. ............................... 5

    C.    Ms. Richard's Claims......................................................................................... 6

    D.    Significant Portions of the Complaint Do Not Apply to Ms. Richard's Allegations Against Glens Falls........................................................................... 7

LEGAL STANDARD .......................................................................................................... 8

    A.    Federal Rule of Civil Procedure 12(b)(6) .......................................................... 8

    B.    Federal Rule of Civil Procedure 12(f) ............................................................... 8

ARGUMENT ....................................................................................................................... 9

    A.    Ms. Richard's Breach of Contract Claim Is Implausible and Should Be Dismissed........................................................................................................... 9

        1.    The Complaint Does Not Demonstrate that Glens Falls Breached the Account Agreement By Using the "Available" Balance to Calculate Overdraft Fees................................................................. 10

        2.    The Account Agreement Cannot Reasonably Be Read to Mean the Customer Must Only Maintain a Positive "Ledger" Balance to Avoid Overdraft or NSF Fees. ................................................. 11

        3.    The Account Agreement Cannot Reasonably Be Understood to Limit NSF Fees to One Regardless of How Many Times a Debit Is Presented and Returned........................................................... 15

    B.    Because Glens Falls Imposed Its Fees in Accordance With the Express Terms of its Account Agreement, There Can Be No Claim for Breach of an Implied Covenant. ........................................................................................ 17

    C.    Plaintiff Cannot State Quasi-Contract Claims for Unjust Enrichment (Count III) or Money Had and Received (Count IV) Because the Account

Agreement Indisputably Governs the Banking Relationship Between the Parties...................................................................................................................... 19

D.     Plaintiff Cannot State a Claim under NYGBL § 349 Because Glens Falls Imposed Fees In Accordance with the Express Provisions of the Account Agreement and Therefore Could Not Have Acted in a Deceptive Manner.......... 20

E.     The Court Should Strike Inapplicable Portions of the Complaint. ....................... 20

CONCLUSION ..................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................8

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
    448 F.3d 573 (2d Cir. 2006)..................................................................................................19

*Bombay Realty Corp. v. Magna Carta, Inc.*, 790 N.E.2d 1163 (N.Y. 2003)..................................12

*Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1 (D.D.C. 2016)....................................15

*Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421 (S.D.N.Y. 2010) ........................................9, 23

*Consedine v. Portville Cent. Sch. Dist.*, 12 N.Y.3d 286, 879 N.Y.S.2d 806, 907
    N.E.2d 684 (2009).................................................................................................................13

*Deer Park Enterprises, LLC v. Ail Sys., Inc.*, 870 N.Y.S.2d 89 (N.Y. App. Div. 2d
    Dept. 2008) ...........................................................................................................................18

*Domann v. Summit Credit Union*, No. 18-CV-167-WMC (W.D. Wis. Sept. 13,
    2018) .....................................................................................................................................14

*Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*, 949 N.Y.S.2d 115 (N.Y. App. Div. 2d
    Dept. 2012) ...........................................................................................................................17

*Falso v. Ablest Staffing Servs.*, 328 F. App'x 54 (2d Cir. 2009) ...................................................8

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611 (2d
    Cir. 2010) ..............................................................................................................................20

*J. Kokolakis Contracting Corp. v. Evolution Piping Corp.*, 998 N.Y.S.2d 788
    (N.Y. Sup. 2014)...................................................................................................................18

*Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103-LO-MSN, 2019 WL
    3843064 (E.D. Va. Aug. 14, 2019) ............................................................................... *passim*

*Lipsky v. Cmmw. United Corp.*, 551 F.2d 887 (2d Cir. 1976).................................................9, 21

*Livingston v. Trustco Bank et al.*, Case No. 20-cv-01030 (Sept. 2, 2020 N.D.N.Y) ......................7

*Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629 (S.D.N.Y.
    2018) .....................................................................................................................................21

*Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423 (6th Cir. 2018)................................................5, 6

*Loudon Plastics, Inc. v. Brenner Tool & Die, Inc*., 74 F. Supp. 2d 182 (N.D.N.Y. 1999) ................................................................................................................17

*Low v. Robb*, 11-CV-2321 JPO, 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ........................9, 22

*Lynch v. Southampton Animal Shelter Found. Inc.,* 278 F.R.D. 55 (E.D.N.Y. 2011) ..............................................................................................................9, 22

*Nuss v. Sabad,* No. 710CV0279LEKTWD, 2016 WL 4098606 (N.D.N.Y. July 28, 2016) ................................................................................................................20

*Page v. Alliant Credit Union*, 19-CV-5965, 2020 WL 5076690 (N.D. Ill. Aug. 26, 2020) ........................................................................................... *passim*

*Patchen v. Gov't Employers Ins. Co.,* 759 F. Supp. 2d 241 (E.D.N.Y. 2011) ..............................19

*Richards v. Direct Energy Servs., LLC*, 915 F.3d 88 (2d Cir. 2019)............................................17

*S. Rd. Associates, LLC v. Intern. Bus. Machines Corp*., 826 N.E.2d 806 (N.Y. 2005) ................................................................................................................12

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988) ..................................................................9, 21

*Sirota v. Welbilt Appliance, Inc*., 840 F. Supp. 11 (E.D.N.Y. 1994)........................................9, 21

*Snyder v. Cooper*, No. 07-CV-271, 2007 WL 1879749 (N.D.N.Y. June 29, 2007).....................19

*Spinac v. Carlton Grp., LTD.,* 99 A.D.3d 603, 952 N.Y.S.2d 870 (N.Y. 2012) ........................12

**Statutes and Constitutional Provisions**

NY General Business Law § 349 ...........................................................................................6, 20

**Rules & Regulations**

12 C.F.R. § 1005.17 ....................................................................................................................3

Fed. R. Civ. P. 12 ............................................................................................................ *passim*

**Other Authorities**

*Initiate*, Merriam-Webster.com (last visited Sept. 30, 2020) .......................................................12

NACHA, *ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles and Responsibilities of ODFIs and RDFIs* (Sept. 30, 2014) (citing Subsection 2.12.4), available at https://www.nacha.org/news/ach-operations-bulletin-1-2014-questionable-ach-debit-origination-roles-and-responsibilities ....................................................................................................6, 16

## INTRODUCTION

This case joins numerous similar cases pending nationwide that challenge community banks' and credit unions' disclosure of their practices relating to overdraft and insufficient funds ("NSF") fees. Four similar cases are pending in the Northern District of New York alone. But while the plaintiffs' theories are virtually identical in each of these cases, the specific circumstances—and the specific account agreements at issue—are not.

In this case, Plaintiff Daphne Richard's ("Ms. Richard" or "Plaintiff") Complaint against Defendant Glens Falls National Bank and Trust Company ("Glens Falls") fails in its entirety because her claims are insufficiently pleaded and wholly implausible given the language of the applicable agreement. <u>First</u>, Ms. Richard does not sufficiently plead her breach of contract claim. Ms. Richard alleges her deposit account agreement with Glens Falls (the "Account Agreement") permits Glens Falls to assess overdraft or NSF fees only when her "ledger" balance[1]—but not her "available" balance—falls below zero. To demonstrate she was harmed by Glens Falls' use of the "available" balance, Ms. Richard alleges Glens Falls improperly imposed overdraft fees on two transactions in July 2018. But nothing in the Complaint explains what either her "available" or "ledger" balance was at the time, and therefore in any way connects the fees Ms. Richard incurred to the wrongs she alleges. Indeed, the Complaint appears to concede the funds were "insufficient" at the time to cover these transactions.[2] Similarly, Ms. Richard alleges she was charged an overdraft fee on a transaction in December 2018, but she does not explain how Glens Falls' use of the "available" balance led to that fee. The Complaint therefore lacks even the most basic factual information to demonstrate Glens Falls breached the

---

[1] The account's "available balance" reflects all debit transactions initiated by Plaintiff, including transactions that are pending and have not yet settled. The "ledger balance" reflects only settled transactions—or transactions that are fully-processed and paid.

[2] It is possible, and perhaps likely, that this statement was actually a typographical error in the Complaint.

Account Agreement by using the "available" versus "ledger" balance to assess overdraft fees.

Second, even if Ms. Richard's factual allegations were sufficient to state a viable breach of contract claim (which they are not), the claim would still fail as implausible based on the Account Agreement's plain language.  The Account Agreement explicitly states that Plaintiff "must maintain a balance in [her] Account that will cover the checks [she] write[s] and any other debits or similar transactions … ***initiated*** by [her]…."  *See* Account Agreement (**Exhibit A**),[3] at p. 2.  "Initiated" means exactly what it says:  the balance must exceed the sum of all transactions—started, pending, or settled—drawn on the account.  Contrary to Ms. Richard's tortured interpretation, there is no language in the Account Agreement that suggests she must maintain a balance that only covers her "settled" or "processed" transactions.  This would be directly contrary to the Account Agreement's requirement that the account balance cover all "initiated" (*i.e.* all begun and pending) transactions.

Glens Falls' requirement that a customer's account balance cover all "initiated" transactions is also consistent with other language in the Account Agreement that instructs Ms. Richard cannot use funds for payment or withdraw funds until they are "available."  *See* Ex. A, at p. 5.  Ms. Richard does not, because she cannot, offer any reason why Glens Falls would use the "available" balance to determine what funds she can actually spend but use only the "ledger" balance to determine when the funds in her account are insufficient to cover her transactions.  Read together, as they must be, the Account Agreement's provisions regarding funds availability and insufficient funds cannot support the interpretation that Ms. Richard asks this Court to adopt.

Ms. Richard also alleges Glens Falls improperly assessed multiple NSF fees.  But the plain language of the Account Agreement authorizes Glens Falls to assess an NSF fee each time

---

[3] All citations to the Account Agreement in this memorandum are to the August 2013 version of the Agreement, which governs the breaches alleged by Plaintiff.  *See* Decl. of P. Lareau, ¶ 2.   In any event, there have been no revisions to the language at issue in Plaintiff's Complaint since August 2013.  *Id.*

a debit transaction is presented for payment and returned.  The Account Agreement permits Glens Falls to assess overdraft fees on "items" presented for payment.  Ms. Richard contends "item" refers to a single transaction regardless of the number of times presented for payment and returned.  This exact argument was rejected by the United States District Courts for the Eastern District of Virginia and Northern District of Illinois.  *See Lambert v. Navy Fed. Credit Union,* No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *4 (E.D. Va. Aug. 14, 2019); *Page v. Alliant Credit Union*, 19-CV-5965, 2020 WL 5076690, at *4 (N.D. Ill. Aug. 26, 2020).  In *Lambert*, the Court dismissed an identical claim based on its finding that when one re-presents a request for payment, it becomes a new debit "item."  *See* 2019 WL 3843064, at *4.  In *Page*, the plaintiff similarly argued that "[b]ased on the singular use of the terms 'charge' and 'item' … Alliant can only charge one fee for a single transaction."  2020 WL 5076690, at *4.  The Court found that "Page's stilted reading of the Membership Agreement does not create any ambiguity," and dismissed the claim.  *Id.*  The Court should do the same here.

Because the Account Agreement's plain language contradicts Ms. Richard's allegations, her breach of contract claim (Count I) cannot survive.  Ms. Richard's other claims also fail.  Her claim for breach of implied duty of good faith (Count II) cannot stand alone where she alleges a breach of contract claim based on the same underlying facts.  And Ms. Richard's quasi-contract claims for unjust enrichment (Count III) and money had and received (Count IV) fail because there is an express contract—the Account Agreement—that governs the relationship between Ms. Richard and Glens Falls.

Finally, portions of Ms. Richard's Complaint are inapplicable to her allegations and to Glens Falls' alleged breaches.  Specifically, Paragraphs 20 and 21 relate only to violations of Regulation E (12 C.F.R. § 1005.17) of the Electronic Fund Transfers Act (the "EFTA").

However, Ms. Richard has not alleged a claim for an EFTA violation, and the Complaint does not contain factual allegations relating to any Regulation E violations by Glens Falls. Accordingly, this Court should strike those paragraphs as immaterial, impertinent, and prejudicial under Fed. R. Civ. P. 12(f).

For these reasons, and those discussed below, Glens Falls respectfully requests that this Court:  (1) dismiss Plaintiff's Complaint; and/or (2) strike immaterial portions of the Complaint.

## BACKGROUND

**A.      Glens Falls' Account Agreement States that Overdraft or NSF Fees Will Be Assessed When "Initiated" (and Not "Settled" or "Processed") Transactions Exceed the Money in the Account.**

Glens Falls' Account Agreement governs the relationship between the bank and its customers as it relates to deposit accounts.  The Insufficient Funds provision of the Account Agreement states as follows:

- "You must maintain a balance in your Account that will cover the checks you write and any other debits or similar transactions (in-person withdrawals, ATM withdrawals or other electronic transactions) *initiated* by you, and other fees or charges applied to your Accounts …";

- "If you write a check or *initiate* debits or similar transactions for more money than you have in your Account, we have the option to either pay the check or other debit or similar transaction or return it unpaid."

- "The Bank may determine whether your Account contains sufficient funds to pay a check, or other debit or similar transaction at any time between the time the check or other debit or similar transaction is received by the Bank and the Bank's return deadline, and only one determination of the Account balance is required.  If that determination reveals insufficient funds to pay the check or other debit or similar transactions, the Bank will not be required to honor the check or other debit or similar transactions."

*See* Ex. A, at p. 2 (emphasis added).

The Account Agreement also includes a Funds Availability Policy that further informs customers what balance they need to maintain in order to pay checks or withdraw funds.  That

provision states customers may only "use" or "withdraw" funds out of their account when they are made "available":

> Our policy is to make a portion of the funds from your deposit available to you on the business day we receive your deposit and to make the remaining funds from your deposit available at a later date. **Once the funds are available, we will use them to pay checks that you have written or you may withdraw them in cash**.

*See* Ex. A, at p. 5 (emphasis added).

Another provision of the Funds Availability Policy also informs customers that if they need funds immediately, they should ask Glens Falls when the funds will be "available"—*i.e.* when the funds can be used or withdrawn. *See id.* ("If you will need the funds from a check deposit right away, you should ask us when the funds will be available. In some cases, we will not make all of the funds that you deposit by check available to you at the times shown above.").

**B.     Glens Falls' Account Agreement Does Not Limit NSF Fees To One Fee Regardless of How Many Times a Transaction Is Presented.**

The Account Agreement provides that Glens Falls "will impose a handling charge for each check or other debits or similar transactions presented against insufficient funds, whether or not we pay the check or other debits or similar transactions." Ex. A, at p. 2. Notably, there is no language in the Account Agreement limiting Glens Falls to one NSF fee once per transaction regardless of the number of times the item is presented. To the contrary, the Account Agreement states the fee may be assessed whenever "debits" or "transactions" are "presented." *Id.*

The Account Agreement also explicitly states that the National Automated Clearing House Association ("NACHA Rules") apply to Plaintiff's account. *See* Ex. A at 8 ("Under the operating rules of the National Automated Clearing House Association (NACHA), which are applicable to ACH transactions involving your account …"). Under the NACHA rules, Plaintiff (as the "Receiver") authorizes the merchant (the "Originator") to initiate each ACH transaction into the ACH network. *See Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 426-47 (6th Cir.

2018) (discussing applicable NACHA Rules).  The Originator and its bank are then responsible for deciding when and how the debit will be presented for payment.  *Id.*  Glens Falls, as the Receiving Depository Financial Institution (the "RDFI"), simply must honor and process any requests it receives through the ACH network.  *Id.*  If there are insufficient funds in a particular account to cover a Receiver-initiated transaction, however, Glens Falls may return the item and charge an NSF fee.  *See* Ex. A, at p 2.

The NACHA Rules also provide that the Originator or its bank may reinitiate any transaction that "was returned for insufficient or uncollected funds."  NACHA Rules, Subsection 2.12.4.  Under those circumstances, the reinitiated transaction constitutes an entirely new transaction with entirely new identifying information.  *See, e.g.,* NACHA, *ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles and Responsibilities of ODFIs and RDFIs* (Sept. 30, 2014) (citing Subsection 2.12.4), available at https://www.nacha.org/news/ach-operations-bulletin-1-2014-questionable-ach-debit-origination-roles-and-responsibilities ("a reinitiated Entry could have a different Effective Entry Date than the original Entry, as well as a different ACH Trace Number.").  Crucially, Glens Falls, as the RDFI, does not (and cannot) determine when a particular transaction will be resubmitted for payment.  The Originator or its bank makes that decision—and may even take up to 180 days to resubmit such a charge for payment.  *See* NACHA Rules, Subsection 2.12.4.

## C.    **Ms. Richard's Claims**

Plaintiff filed her Complaint on July 1, 2020, asserting five claims against Glens Falls as a representative of two putative classes:  (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) money had and received, and (5) violation of NY General Business Law § 349.  Counts II-V, however, are essentially reiterations of Plaintiff's breach of contract claim (Count I), which alleges that Glens Falls breached the express

and implied terms of the Account Agreement by (1) assessing overdraft or NSF fees based on the "available balance" as opposed to the "ledger balance," and (2) assessing NSF fees each time a debit transaction is presented for payment and returned.

Ms. Richard only offers a single paragraph of factual allegations relating to the fees allegedly assessed to her account. In support of her claim that Glens Falls used the wrong method of calculating the account's balance for purposes of assessing overdraft fees, Ms. Richard alleges that, on July 24, 2018, she was charged two $32 NSF fees for a $14.49 item and a $13.14 item. *See* Compl. ¶ 57. On December 24, 2018, Ms. Richard alleges she was charged a $32 overdraft fee in a transaction for $51.29, when she had $73.58 in her account.[4] *See id.*

In support of her claim relating to multiple NSF fees, she alleges that, on December 26, 2018, she incurred two NSF fees for two separate charges that were declined. *See id.* On January 2, 2019, Ms. Richard was again charged two NSF fees for the two transactions initiated on December 26, 2018, after they were re-presented for payment and declined. *See id.* Lastly, Ms. Richard alleges she was charged an NSF fee on July 20, 2016. *See id.* Ms. Richard incurred an additional NSF fee when the same item was re-presented for payment on July 26, 2016.

**D.   Significant Portions of the Complaint Do Not Apply to Ms. Richard's Allegations Against Glens Falls.**

While Ms. Richard offers only one paragraph reciting her own experience with Glens Falls, the Complaint includes several paragraphs that are wholly inapposite to this case. Paragraphs 20 and 21 relate to violations of Regulation E of the EFTA.[5] However, Ms. Richard

---

[4] The Complaint states that Ms. Richard had $73.58 in her account, but does not explain whether that amount represented the "available balance" or the "ledger balance."

[5] It is possible (and perhaps likely) that Plaintiff did not intend to include Paragraphs 20 and 21 in the Complaint. Those paragraphs appear to be identical to certain allegations made in other similar cases filed by Plaintiff's counsel where the plaintiff does allege an EFTA violation. *See, e.g., Livingston v. Trustco Bank et al.,* Case No. 20-cv-01030 (Sept. 2, 2020 N.D.N.Y), ECF 1 at ¶¶ 21-22 (identical to ¶¶ 20-21 in Plaintiff's Complaint); *see also id.* at ¶¶ 85-91 (alleging a violation of the EFTA).

does not bring a claim for a violation of the EFTA, and the Complaint does not contain factual

allegations relating to any Regulation E violation by Glens Falls.[6]

## LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim

that "offers mere 'labels and conclusions' . . . will not do," particularly if it includes only

"'naked assertions' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at

555, 557). "Determining whether a complaint states a plausible claim for relief [requires the

Court] to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679.

In deciding a motion to dismiss, this Court should consider the "facts alleged in the

complaint or in the documents attached to the complaint as exhibits or incorporated in the

complaint by reference." *Falso v. Ablest Staffing Servs*., 328 F. App'x 54 (2d Cir. 2009).

### B.  Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) authorizes federal courts to strike any matter in the

Complaint that is "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).

More specifically, "[w]hen a complaint does not comply with the requirement that it be short and

plain, the court has the power … to strike any portions that are redundant or immaterial[.]"

---

[6] In addition, certain portions of the Complaint refer to and/or describe an opt-in courtesy overdraft program,
presumably also under Regulation E.  *See, e.g.,* Compl. ¶¶ 17, 21.  Such allegations are unsupported by any
language in the Account Agreement, or by any facts showing that Glens Falls has such a program (which it does
not).

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Sirota v. Welbilt Appliance, Inc.*, 840 F. Supp. 11, 14 (E.D.N.Y. 1994) (striking allegations relating to punitive damages as "legally irrelevant and unduly prejudicial" where such damages were unavailable); *Low v. Robb*, 11-CV-2321 JPO, 2012 WL 173472, at *10 (S.D.N.Y. Jan. 20, 2012) (striking allegations with "no relevance to this particular case").

Federal courts should grant Rule 12(f) motions strike on the grounds that the allegations are impertinent or immaterial where defendants shows "that no evidence in support of the allegation would be admissible." *Lipsky v. Cmmw. United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Motions to strike are especially appropriate where the allegations will prejudice defendants by revealing offensive matters to the jury or unnecessarily increasing the duration and expense of litigation. *See, e.g., Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 67 (E.D.N.Y. 2011) ("The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety[.]"); *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010) ("The burden of additional discovery and increasing the duration and expense of litigation can constitute sufficient prejudice.").

## ARGUMENT

### A.   Ms. Richard's Breach of Contract Claim Is Implausible and Should Be Dismissed.

Ms. Richard's Complaint does not plead a viable breach of contract claim because it fails to sufficiently allege facts showing that she was harmed by Glens Falls' alleged use of the "available" balance instead of the "ledger" balance.[7]   While Ms. Richard asserts certain fees

---

[7] In Count I, Plaintiff purports to bring a common law breach of contract claim against Glens Falls for its alleged failure to comply with certain provisions of the Account Agreement. At this stage of the litigation, and without waiving its rights, Glens Falls understands Plaintiff is not alleging a failure to Glens Falls to disclose specific fee practices. To the extent Count I attempts to bring a claim against Glens Falls for an alleged failure to disclose certain fee practices, it is preempted by the Truth in Savings Act. *See, e.g., Lambert v. Navy Fed. Credit Union*,

were imposed against her account (*see* Compl. ¶ 57), she fails to allege any facts showing that those fees were actually imposed because Glens Falls used the "available" balance—or alternatively, that the fees she allegedly incurred would not have been imposed if Glens Falls used the "ledger" balance.  This portion of her claim therefore fails on the pleaded facts alone.

Even if the Complaint contained sufficient factual allegations to support the claim, it would still fail because Ms. Richard's allegations ignore the plain and unambiguous language of the Account Agreement, including the Insufficient Funds and Funds Availability provisions.  These provisions are clear that bank customers must maintain positive balances that cover all "initiated" (not "cleared" or "settled") transactions, and that Glens Falls uses an account's "available" balance when determining what funds may be spent as well as when assessing overdraft or NSF fees.  The Account Agreement also expressly permits Glens Falls to charge an NSF fee each time "debits" or "transactions" are presented for payment and returned.  In short, Glens Falls complied with the unambiguous terms of its Account Agreement.

1.   The Complaint Does Not Demonstrate that Glens Falls Breached the Account Agreement By Using the "Available" Balance to Calculate Overdraft Fees.

In support of her five claims, Ms. Richard provides only a single paragraph of factual allegations—discussing only four particular instances—regarding the alleged overdraft and/or NSF fees imposed on her account:

- On July 24, 2018, Ms. Richard alleges she was charged two $32 NSF fees for a $14.49 item and a $13.14 item.

- On December 24, 2018, Ms. Richard alleges she was charged a $32 overdraft fee in a transaction for $51.29, when she had $73.58 in her account.[8]

---

2019 WL 3843064, at *2-3 (E.D. Va. Aug. 14, 2019) ("[I]t is well established that state law claims regarding a federal credit union's failure to disclose certain fee practices … are preempted.").

[8] Again, the Complaint does not specify whether that amount represents the "available balance" or the "ledger balance."

- On December 26, 2018, Ms. Richard was charged two NSF fees for two separate charges that were declined.  On January 2, 2019, Ms. Richard was again charged two NSF fees for the two transactions initiated on December 26, 2018 after they were re-presented for payment and declined.

- On July 20, 2016, Ms. Richard alleges she was charged an NSF fee after a certain item was declined.  Ms. Richard incurred an additional NSF fee when the same item was re-presented for payment and rejected on July 26, 2016.

*See* Compl. ¶ 57.  Even reading the Complaint liberally, Ms. Richard does not allege sufficient facts to establish whether Glens Falls used the "available" or "ledger" balance to impose any of the fees discussed in Paragraph 57.  Her allegations also do not establish that Glens Falls' use of the "available balance" resulted in the alleged fees—or that Glens Falls' use of the "ledger balance" would *not* have resulted in her incurring those fees.  For that reason alone, that part of Ms. Richard's breach of contract claim must be dismissed.

2.   The Account Agreement Cannot Reasonably Be Read to Mean the Customer Must Only Maintain a Positive "Ledger" Balance to Avoid Overdraft or NSF Fees.

Even if Ms. Richard has pleaded sufficient facts to support her breach of contract claim, in order for that claim to be plausible, she would need to show that the Account Agreement could reasonably be read to state that Glens Falls uses only the account's "ledger balance" to determine when to assess overdraft of NSF fees.  As evidence that this reading is reasonable, Plaintiff points to the provision of the Account Agreement stating that Glens Falls will impose such fees "[i]f you write a check or initiate other debits or similar transactions for **more money than you have in your Account**."  Compl. ¶ 29 (emphasis in original).  She then argues the Account Agreement does not specifically state that "money in your account" does not include money placed on hold for pending transactions.  *Id.*

Ms. Richard's interpretation of the Account Agreement is directly at odds with its plain language.  The Account Agreement's Insufficient Funds Policy plainly states that customers

11

must maintain a balance that will cover all **_initiated_** transactions.  *See, e.g.,* Ex. A, at p. 2 ("You must maintain a balance in your Account that will cover the checks you write and any other debits or similar transactions (in-person withdrawals, ATM withdrawals or other electronic transactions) **initiated by you** and any other fees or charges applied to your Accounts ...") (emphasis added); *id.* at p. 2 ("If you write a check or **initiate other debits or similar transactions** for more money than you have in your Account, we have the option to either pay the check or other debit or similar transaction or return it unpaid." ) (Emphasis added).  "Initiate" means "to cause or facilitate the beginning of: set going."  *See Initiate*, Merriam-Webster.com (last visited Sept. 30, 2020) ("to cause or facilitate the beginning of: set going").  When Plaintiff entered into the Account Agreement with Glens Falls, she agreed to maintain a balance that would cover all transactions that she "caused" or "facilitated the beginning of."  If she initiated transactions that exceeded the money in her account, she further agreed that Glens Falls could impose overdraft or NSF fees *based on the total of these initiated transactions.*  There is no reasonable way to read the term "initiated" transaction to mean already "settled" or "processed," and therefore no reasonable way to read the Account Agreement to state the Glens Falls will impose overdraft or NSF fees only when all of the "initiated" transactions have cleared.

To advance her strained interpretation, Ms. Richard improperly cherry-picks certain language in the Account Agreement in an attempt to place excessive emphasis on particular phrases, such as "more money than you have in your account."  But this Court must read all parts of a contract "in harmony to determine its meaning."  *Bombay Realty Corp. v. Magna Carta, Inc*., 790 N.E.2d 1163 (N.Y. 2003); *see also S. Rd. Associates, LLC v. Intern. Bus. Machines Corp*., 826 N.E.2d 806 (N.Y. 2005) ("It is also important to read the document as a whole to ensure that excessive emphasis is not placed upon particular words or phrases."); *Spinac v.*

*Carlton Grp., LTD.,* 99 A.D.3d 603, 604, 952 N.Y.S.2d 870, 871 (N.Y. 2012) ("Agreements should be construed as a whole to avoid excessive emphasis on particular words or phrases"); *Consedine v. Portville Cent. Sch. Dist*., 12 N.Y.3d 286, 879 N.Y.S.2d 806, 907 N.E.2d 684, 689 (2009) (instructing courts to read contracts as a whole and not place "undue emphasis" upon particular words or phrases). The Account Agreement's language stating "more money than you have in your account" must be read together with the language requiring Ms. Richard to maintain sufficient funds to cover all "initiated" (*i.e.* begun and pending) transactions.

Ms. Richard's argument that she did not understand she could incur overdraft fees if she "initiated" transactions that exceeded the money she had in her account, but would incur these fees only if the balance fell below zero at the time these transactions settled or cleared, is unsupported by *any* language in the Account Agreement. In effect, Ms. Richard asks this Court to re-write the phrase "If you write a check or initiate debits or similar transactions for more money than you have in your Account" to state "If the total of your settled transactions exceeds the money you have in your Account." But that is not what the Account Agreement says.

Ms. Richard's interpretation also defies common sense. Under her interpretation, Glens Falls could not deem her account balance "insufficient" even if the total of one day's ACH transactions greatly exceeded the funds in the account. In Ms. Richard's review, Glens Falls would also be required to permit her to keep making purchases despite no remaining funds in the account until all pending ACH transactions had all cleared. Ms. Richard offers no explanation whatsoever in her Complaint why she would have understood the Account Agreement to allow her to make purchases even where pending transactions had used up all of the funds in her account.

Ms. Richard's purported understanding is also at odds with the Account Agreement's Funds Availability provision. That provision contains multiple statements establishing that Plaintiff can only "use [her funds] to pay checks" or "withdraw" her funds when they are "available:"

- "Our policy is to make a portion of the funds from your deposit available to you on the business day we receive your deposit and to make the remaining funds from your deposit available at a later date. **Once the funds are available, we will use them to pay checks that you have written or you may withdraw them in cash**." (Emphasis added);

- "**If you will need the funds from a check deposit right away, you should ask us when the funds will be available**. In some cases, we will not make all of the funds that you deposit by check available to you at the times shown above." (Emphasis added)

- "Depending on the type of check that you deposit, funds may not be available until the seventh (7th) Business Day after the Day of Deposit. However, the first $200 of your deposits will be available on the Day of Deposit."

Ex. A at p. 5. Ms. Richard's suggestion that Glens Falls would use the account's "available" balance to determine availability of funds, but would use the "ledger" balance to determine when to impose overdraft fees, is once again unsupported by any language in Account Agreement.

Notably, other courts have recently dismissed claims nearly identical to Ms. Richard's after reading the funds availability disclosure "in harmony" with the account agreement as a whole. *See, e.g., Domann v. Summit Credit Union*, No. 18-CV-167-WMC (W.D. Wis. Sept. 13, 2018), at p. 8 ("[Other] courts found that, when the funds availability disclosure was read in the context of the agreements as a whole, the agreements could only be reasonably interpreted as providing for use of the available balance method, not the ledger balance method, for assessing overdrafts. Reading [plaintiff's] contract in a similar fashion, I reach the same conclusion here."); *Page v. Alliant Credit Union*, No. 19-CV-5965, 2020 WL 5076690, at *4 (N.D. Ill. Aug.

26, 2020) (dismissing plaintiff's claim because, *inter alia,* the Funds Availability Policy explained a member's ability to withdraw funds based on their availability); *see also Chambers v. NASA Fed. Credit Union,* 222 F. Supp. 3d 1, 12-13 (D.D.C. 2016) (dismissing plaintiff's claim after reading the account agreement in harmony with the Funds Availability Policy).  The Court should do the same here.

3.   The Account Agreement Cannot Reasonably Be Understood to Limit NSF Fees to One Regardless of How Many Times a Debit Is Presented and Returned.

Plaintiff also contends Glens Falls breached the Account Agreement because it purportedly promised to charge only a single NSF fee for Plaintiff's returned ACH and check transactions, regardless of how many times the transaction is submitted for payment.  In support, Ms. Richard cites to the language in the Account Agreement stating Glens Falls "may honor the check or other item and create **an** overdraft."  Compl. ¶ 32 (emphasis in original).  Based on this language, she argues that the word "item" means a single electronic transaction, and that a re-presentment of the transaction does not convert it into a different item.

The United States District Courts for the Eastern District of Virginia and Northern District of Illinois recently rejected Ms. Richard's very argument.  *See Lambert,* 2019 WL 3843064, at *4; *Page,* 2020 WL 5076690, at *4.   In *Lambert,* the Court found that when a transaction is represented for payment, it becomes a new ACH debit item and is therefore eligible for an NSF fee:

> When Plaintiff's insurer 're-presented' the request for payment, it was a new ACH debit item – just as a second check would be a new check even if it was by the same merchant, in the same amount, for the same purpose – and was therefore eligible for a fee when it was returned for nonsufficient funds.

2019 WL 3843064, at *4.  The Court further explained that the credit union "did not keep Plaintiff's [merchant's] unsuccessful first ACH requested, but rather, "returned the request" and "waited for [the merchant] to submit another request for payment."   *Id*.  The court ultimately

dismissed plaintiff's breach of contract claim because the contract "unambiguously provide[d] that each time Navy Federal Credit Union returns a request for payment for insufficient funds, a nonsufficient fund fee may be assessed without regards to whether the returned debit item was a re-presentment of a previously rejected request."  *Id.*

In *Page,* plaintiff also argued that "[b]ased on the singular use of the terms 'charge' and 'item' … Alliant can only charge one fee for a single transaction."  2020 WL 5076690, at *4. There, the Court also rejected plaintiff's argument, explaining that the membership agreement at issue unambiguously authorized defendant to charge its members such fees every time a payee presents an item for payment against insufficient funds:

> The language in these provisions does not promise members that Alliant will charge just one overdraft fee per transaction.  Rather, in the context of the entire Membership Agreement, Alliant charges its members an overdraft fee every time a third-party payee presents an item for payment against insufficient available funds. Page's stilted reading of the Membership Agreement does not create any ambiguity.

*Id.*

The *Lambert* and *Page* Courts' rulings are also consistent with the NACHA Rules, which apply to Plaintiff's account.  *See* Ex. A, at p. 1.  Under the NACHA Rules, Glens Falls—as the Receiving Depository Financial Institution—does not determine whether or when a particular transaction will be presented a second (or third) time for payment.  *See* NACHA Rules, Subsection 2.12.4 (also stating such a resubmission could occur up to 180 days after the first submission).  Upon resubmission, the transaction becomes a new transaction and receives new identifying information.  And under the NACHA Rules, a merchant—without any direction from the Receiving Depository Financial Institution (here, Glens Falls)—can reinitiate a transaction "a maximum of two times following the Return of the original Entry."  *Id.*  Put simply, each presentment is a separate and distinct transaction.   And under the terms of the Account

Agreement, contrary to Ms. Richard's allegations, each presentment also permits Glens Falls to assess a separate fee.

**B.      Because Glens Falls Imposed Its Fees in Accordance With the Express Terms of its Account Agreement, There Can Be No Claim for Breach of an Implied Covenant.**

In Count II, Ms. Richard again alleges Glens Falls breached its implied covenant of good faith and fair dealing by executing its contractual obligations when it (1) assessed overdraft or NSF fees based on the "available balance" as opposed to the "ledger balance," and (2) assessed an NSF fee each time a debit transaction is presented for payment and returned. *See* Compl. ¶ 83.  Count II must be dismissed because Glens Falls acted in accordance with the Account Agreement, and the claim is duplicative of Ms. Richard's breach of contract claim.

First, as discussed in Section I above, Glens Falls acted in accordance with the unambiguous terms of the Account Agreement, and therefore could not have abused its contractual rights or otherwise acted in bad faith with respect to its contractual rights or obligations. *See Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.,* 949 N.Y.S.2d 115, 118 (N.Y. App. Div. 2d Dept. 2012) (stating a party breaches its implied duty "when it exercises a contractual right as part of a scheme to realize gains that the contract implicitly denies or to deprive the other party of the fruit (or benefit) of its bargain"); *see also Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 97 (2d Cir. 2019) ("To establish a breach of the implied covenant, the plaintiff must also show that the defendants' allegedly wrongful acts were taken in bad faith.") (internal quotations omitted).

Second, Count II must be dismissed because it is subsumed within Plaintiff's breach of contract claim (Count I).  A claim for breach of the implied duty of good faith and fair dealing "cannot stand alone, but is subsumed within the breach of the underlying contract." *Loudon Plastics, Inc. v. Brenner Tool & Die, Inc*., 74 F. Supp. 2d 182, 188 (N.D.N.Y. 1999); *see also,*

*e.g., Deer Park Enterprises, LLC v. Ail Sys., Inc.,* 870 N.Y.S.2d 89, 90 (N.Y. App. Div. 2d Dept. 2008) ("A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of the contract.") (internal quotations omitted); *J. Kokolakis Contracting Corp. v. Evolution Piping Corp.,* 998 N.Y.S.2d 788, 791 (N.Y. Sup. 2014) ("A claim for breach of the implied covenant of good faith and fair dealing is generally actionable only where wrongs independent of the express terms of the contract are asserted and demands for the recovery of separate damages[.]").

Here, Counts I and II are indisputably based on the same underlying facts:  Glens Falls' alleged breach of the Account Agreement (or implied duty of good faith with respect to the Account Agreement) based on its practices of allegedly assessing multiple fees for the same electronic item, and assessing NSF or overdraft fees when there was enough money in the account to cover the transaction.  Compl. ¶¶ 79, 87.  Thus, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing cannot stand alone.

Finally, Ms. Richard alleges that Glens Falls breached its implied duty of good faith and fair dealing when it "unilaterally elected to and did program its software to create accounting gimmicks which would maximize its overdraft and NSF fees." Compl. ¶ 87.  However, the United States District Court for the Northern District of Illinois recently (and appropriately) rejected this exact argument as a "non-starter."  *See Page v. Alliant Credit Union, et al,* No. 19-cv-5965, 2020 WL 5076690 at n.3 (N.D. Ill. Aug. 26, 2020) ("Page's assertion that Alliant uses 'accounting gimmicks' is a non-starter considering that many financial institutions use the available balance method and not the ledger method when calculating overdraft fees.").  In addition, as discussed above, Glens Falls simply determines when it may impose certain fees

based on an account's "available balance" and charges an NSF fee for each item (*i.e.*, each transaction presented for payment and returned). Such practices are not "accounting gimmicks;" Ms. Richard agreed to those unambiguous terms in the Account Agreement.

**C.    Plaintiff Cannot State Quasi-Contract Claims for Unjust Enrichment (Count III) or Money Had and Received (Count IV) Because the Account Agreement Indisputably Governs the Banking Relationship Between the Parties.**

Under well-settled law, "neither a claim for unjust enrichment nor a claim for moneys had and received—both of which are quasi-contract causes of action—will lie when a contract governs the relationship between a plaintiff and a defendant." *Patchen v. Gov't Employers Ins. Co.,* 759 F. Supp. 2d 241, 250 (E.D.N.Y. 2011); *see also Snyder v. Cooper*, No. 07-CV-271, 2007 WL 1879749, at *3 (N.D.N.Y. June 29, 2007) ("The causes of action for money had and received, promissory estoppel, unjust enrichment, and negligence are all quasi-contract claims and are therefore not viable, where, as here, it is undisputed that the parties entered into an express agreement that governs the dispute.") (quoting *Levin v. Gallery 63 Antiques Corp.*, 2006 WL 2802008, at * 19 (S.D.N.Y. Sept.26, 2006)).

Here, because, by Ms. Richard's own allegations, the Account Agreement governs the relationship between her and Glens Falls, Ms. Richard's quasi-contract claims for Unjust Enrichment and Money Had and Received must fail. *See, e.g.,* Compl. ¶ 75 ("Plaintiff … entered into an Account Agreement with Defendant covering the subject of overdraft and NSF transactions."); Compl., ¶ 27 ("Glens Falls entered into a written contract with Plaintiff and the other Class Members titled 'Deposit Account Agreement.'"); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc*., 448 F.3d 573, 587 (2d Cir. 2006) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

In addition, a claim for unjust enrichment is only available where no adequate legal remedy exists.  *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) ("Unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists."); *see also Nuss v. Sabad,* No. 710CV0279LEKTWD, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.") (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).  Here, Ms. Richard has an available remedy in the form of her breach of contract claim.

**D.     Plaintiff Cannot State a Claim under NYGBL § 349 Because Glens Falls Imposed Fees In Accordance with the Express Provisions of the Account Agreement and Therefore Could Not Have Acted in a Deceptive Manner.**

New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."  Plaintiff alleges Glens Falls' practices relating to its imposition of overdraft and NSF fees are deceptive because Glens Falls promised (1) "it would only assess overdraft or NSF fees where the transaction at issue exceeded the actual amount of money in the customer's account, but instead charged fees when the account contained enough money to pay for the transaction," and (2) "it would charge a singular 'fee' per 'item.'"  Compl. ¶ 98.

However, as explained above, at all relevant times, Glens Falls acted in accordance with the unambiguous terms of the Account Agreement.  Therefore, it could not have acted deceptively in imposing overdraft or NSF fees as contemplated under the Account Agreement.

**E.     The Court Should Strike Inapplicable Portions of the Complaint.**

For all of the reasons explained *supra*, Glens Falls respectfully requests that the Court dismiss the Complaint with prejudice.  If the Complaint survives, however, in whole or in part, Glens Falls respectfully requests that the Court strike portions of the Complaint that do not apply

to Ms. Richard's allegations or to Glens Falls.

"When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial[.]" *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 645 (S.D.N.Y. 2018) ("Motions to strike serve to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.") (internal quotations omitted).  Courts should grant Rule 12(f) motions to strike on the grounds that the matter is impertinent and immaterial where a defendant shows "that no evidence in support of the allegation would be admissible." *Lipsky v. Cmmw. United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *see also, e.g., Sirota v. Welbilt Appliance, Inc.*, 840 F. Supp. 11, 14 (E.D.N.Y. 1994) (striking allegations relating to punitive damages as "legally irrelevant and unduly prejudicial" where such damages were unavailable).

Here, Paragraphs 20 and 21 of Plaintiff's Complaint must be stricken as impertinent and immaterial because no evidence in support of those allegations would be admissible.  Those paragraphs allege certain facts relating to violations of Regulation E of the EFTA.  However, Ms. Richard does not bring a claim under the EFTA, and the Complaint does not contain factual allegations relating to any such Regulation E violation by Glens Falls.  The EFTA only governs overdraft fees on ATM and one-time debit card transactions.  The Account Agreement at issue specifically states that Glens Falls does "not charge fees for overdrafts caused by ATM withdrawals or one-time Point of Sale (POS)/Debit Card transactions."  Ex. A, at p. 2.  And Ms. Richard does not allege that Glens Falls imposed overdraft fees on those types of transactions.  Accordingly, because Plaintiff does not bring a claim for a violation of the EFTA, any evidence relating to such violations would be entirely irrelevant, and thus inadmissible.  *See also, e.g.,*

*Low v. Robb*, 11-CV-2321 JPO, 2012 WL 173472, at *10 (S.D.N.Y. Jan. 20, 2012) (striking allegations with "no relevance to this particular case").

If not stricken, Paragraphs 20 and 21 will prejudice Glens Falls by confusing the public and potentially causing "unnecessary forays into immaterial matters" in discovery.  Again, the allegations in Paragraphs 20 and 21 do not apply to Glens Falls and do not relate to any claims or facts at issue in the Complaint.  Thus, if this Court does not strike those allegations, they may confuse the public—and potential jury pool—as to what claims and facts Ms. Richard actually alleges against Glens Falls.  *See Lynch v. Southampton Animal Shelter Found. Inc.,* 278 F.R.D. 55, 67 (E.D.N.Y. 2011) ("The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available.") (quoting 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2011)).  If not stricken, these immaterial paragraphs will also prejudice Glens Falls by improperly broadening the scope of discovery to irrelevant and trivial matters and forcing Glens Falls to incur unnecessary litigation costs.  *See Coach, Inc. v. Kmart Corps.,* 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010) (striking an inapplicable affirmative defense because it would cause plaintiffs to "needlessly incur increased discovery costs in having to explore the factual grounds for [the] defense.").

## CONCLUSION

For the foregoing reasons, Glens Falls respectfully requests that this Court: (1) dismiss Plaintiff's Complaint; or (2) strike immaterial portions of the Complaint.

Dated:  September 30, 2020

Respectfully Submitted,

**THOMPSON COBURN LLP**

By: /s/ Lukasz Sosnicki
    Lukasz Sosnicki
    2029 Century Park East, 19th Floor
    Los Angeles, CA 90067
    (310) 282-2538
    (310) 282-2501 (fax)
    lsosnicki@thompsoncoburn.com

*Attorneys for Defendant Glens Falls
National Bank*

## CERTIFICATE OF SERVICE

I hereby certify that September 30, 2020, a true and correct copy of the foregoing was filed with the Clerk of Court, to be served via the Court's ECF system on all counsel of record.

/s/ *Dana M. Hass*
Dana M. Hass