**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DAPHNE RICHARD, ET AL.,

                Plaintiff,

v.

GLENS FALLS NATIONAL BANK,

                Defendants.

Civil Case No. 1:20-CV-00734-BKS-DJS

Return Date: November 5, 2020

---

**PLAINTIFF DAPHNE RICHARD'S OPPOSITION**
**TO DEFENDANT GLENS FALLS NATIONAL BANK'S MOTION TO DISMISS**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**
**AND MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f)**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 5

II.     LEGAL STANDARD ........................................................................................... 6

III.    ARGUMENT ....................................................................................................... 7

        A.    The First Practice: Defendant Breached the Contract By Charging NSF And OD
              Fees When There Was Enough Money In the Account to Cover The Transaction 7

        A.    A Multitude of Courts Across The Country Have Rejected The Position Argued
              By Defendant Here, Including in the Second Circuit.  At The Very Best For
              Defendant, The Contract Is Ambiguous. ............................................................ 16

        B.    Defendant's Position Is Also Contradicted by NACHA, Which  Uses a Similar
              Term ("Entry") As Plaintiff and Allows Authorizations Only From
              Accountholders .................................................................................................... 21

V.      Plaintiff Has Sufficiently Plead a Violation of the Covenant of Good Faith and Fair

        Dealing .................................................................................................................. 24

VI.     Plaintiff Has Sufficiently Plead a Violation of the Common Counts. ............................... 25

VII.    Plaintiff Has Sufficiently Plead a Violation of  GBL §349 ................................................ 25

VIII.   Paragraphs 20 and 21 of The Complaint Should Not Be Stricken. ................................... 27

IX.     CONCLUSION ..................................................................................................... 27

**<u>TABLE OF AUTHORITIES</u>**

**Federal Cases**                                                                                    **Page(s)**

*Bettencourt v. Jeanne D'Arc Credit Union,*
    370 F. Supp. 3d 258 (D. Mass. 2019) ................................................................. 13

*Carias ex rel. Matos v. Monsanto Co.,*
    No. 15-CV-3677-JMA, 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) ............................... 27

*Chambers v. NASA Fed. Credit Union,*
    222 F. Supp. 3d 1 (D.D.C. 2016) ......................................................................... 14

*In re Checking Account Overdraft Litig.,*
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................................. 27

*Chiste v. Hotels.com L.P.,*
    756 F. Supp. 2d 382 (S.D.N.Y. 2010) ................................................................. 27

*Claridge v. N. Am. Power & Gas, L.L.C. ,*
    No. 15-cv-1261 (PKC), 2015 WL 5155934 (S.D.N.Y. Sept. 2, 2015) ................................ 25

*Coleman v. Alaska USA Fed. Credit Union,*
    No. 3:19-CV-0229-HRH, 2020 WL 1866261 (D. Alaska Apr. 14, 2020) ...................... 20, 21

*Donnenfeld v. Petro, Inc.,*
    333 F. Supp. 3d 208 (E.D.N.Y. 2018) ................................................................. 27

*GlaxoSmithKline L.L.C. v. Beede,*
    No. 1:13-CV-00001, 2014 WL 896724 (N.D.N.Y. Mar. 6, 2014) ................................... 26

*J.C. Penney Corp. v. Carousel Ctr. Co., L.P.,*
    635 F. Supp. 2d 126 (N.D.N.Y. 2008) ................................................................. 26

*Lloyd v. Navy Fed. Credit Union,*
    No. 17-cv-1280-BAS-RBB, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018) ........................ 25

*Lussoro v. Ocean Fin. Fed. Credit Union,*
    No. 18-CV-7400 (PKC) (ST), 2020 U.S. Dist. LEXIS 71057, 2020 WL 1941236 (E.D.N.Y.
    Apr. 22, 2020) ....................................................................................... 7, 12

*M/A-COM Sec. Corp. v. Galesi,*
    904 F.2d 134 (2d Cir. 1990) ............................................................................. 25

*Mayor & Council of Balt. v. Citigroup, Inc. ,*
    709 F.3d 129 (2d Cir. 2013) ............................................................................... 7

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.,*
    906 F.2d 884 (2d Cir. 1990) .......................................................................... 7, 16

*Morris v. Bank of Am., N.A.*,
    CASE NO. 3:18-cv-157-RJC-DSC, 2019 WL 1274928 (W.D.N.C. Jan. 7, 2019) ............... 25

*Morris v. Bank of Am., N.A.*,
    No. 3:18-cv-00157-RJC-DSC, 2019 WL 1421166 (W.D.N.C. Mar. 29, 2019) .................... 18

*Morris v. Bank of Am., N.A.*,
    No. 18-cv-157-RJC-DSC, 2019 WL 1354928 (W.D.N.C. Jan. 8, 2019) .............................. 18

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
    875 F.3d 107 (2d Cir. 2017) ............................................................ 27

*Perks v. TD Bank, N.A.*,
    444 F. Supp. 3d 635 (S.D.N.Y. 2020) .............................................. 7, 19

*Photopaint Techs., L.L.C. v. Smartlens Corp.*,
    335 F.3d 152 (2d Cir. 2003) ............................................................ 16

*Pinkston-Poling v. Advia Credit Union*,
    227 F. Supp. 3d 848 (W.D. Mich. 2016) ............................................. 25

*Ramirez v. Baxter Credit Union*,
    No. 16-cv-03765-SI, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017) .................... 14

*Roberts v. Capital One, N.A.*,
    719 F. App'x 33 (2d Cir. 2017) ........................................... 6, 12, 14

*Salls v. Digit. Fed. Credit Union*,
    349 F. Supp. 3d 81 (D. Mass. 2018) ............................................... 13

*Segovia v. Vitamin Shoppe, Inc.*,
    No. 14-CV-7061 (NSR), 2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017) .............. 27

*Smith v. Bank of Haw.*,
    No. 16-00513 JMS-RLP, 2017 WL 3597522 (D. Haw. Apr. 13, 2017) ......... 13, 14

*Tims v. LGE Cmty. Credit Union*,
    No. 17-14968, 2019 WL 4019847 (11th Cir. Aug. 27, 2019) ................................ 14

*Turner v. Commissioner*,
    303 F.2d 94 (4th Cir. 1962) ............................................................ 23

*Walbridge v. Ne. Credit Union*,
    299 F. Supp. 3d 338 (D.N.H. 2018) ............................................... 13

*Walker v. People's United Bank*,
    305 F. Supp. 3d 365 (D. Conn. 2018) .............................................. 13

*Wodja v. Wash. State Emps. Credit Union*,
    CASE NO. C15-5693 BHS, 2016 WL 3218832 (W.D. Wash. June 9, 2016) ....... 25

**State Cases**

*Gold v. 29-15 Queens Plaza Realty, L.L.C.*,
  841 N.Y.S.2d 668 (2d Dep't 2007) ....................................................................... 26

*Goldman v. Simon Prop. Grp., Inc.*,
  869 N.Y.S.2d 125 (2d Dep't 2008) ....................................................................... 27

*Negrin v. Norwest Mortg., Inc.*,
  700 N.Y.S.2d 184 (2d Dep't 1999) ....................................................................... 27

*People ex rel. Schneiderman v. Orbital Publ'g Grp., Inc.*,
  21 N.Y.S.3d 573 (N.Y. Sup. Ct. 2015) ................................................................ 27

**State Statutes**

N.Y. Gen. Bus. Law § 349 ........................................................................................ 28

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................... 27

Fed. R. Civ. P. 12 ................................................................................................... i, 7

## I.      **INTRODUCTION**

Plaintiff Daphne Richard brings claims regarding two discrete fee maximization practices used by Defendant Glens Falls Bank ("Bank" or "Defendant"). She does not dispute that Defendant  was entitled to charge some Overdraft Fees ("OD Fees") and Insufficient Funds Fees ("NSF Fees"). She does dispute the number of such fees that Defendant charged.

 First, Plaintiff challenges the improper assessment of OD or NSF Fees when there was enough money in the account to cover the transactions in question.  Defendant's Deposit Account ("Account Contract") does not authorize it to assess overdraft or NSF Fees when the account balance has sufficient funds to cover the transaction.  As described in more detail below, the same arguments Defendant makes here have been rejected by the Second Circuit, the Eleventh Circuit, and over a dozen federal district or state courts, including courts within the Second Circuit.  Defendant did not disclose any of these opinions to this Court.

Second, Plaintiff also challenges the assessment of multiple $32 NSF on the same (often small dollar) electronic transactions or checks when reprocessed again and again after initially being returned for insufficient funds, and which do not involve any re-submission by the consumer. To take the simplest example:  when an accountholder writes a check to a certain merchant, for a certain amount, bearing a certain check number, that "check" does not reasonably become a new "check" when the merchant reprocesses it two or three times. Contrarily, Defendant contends that each time it reprocesses an "item" for payment, it transmogrifies into a *new* "item" that can be charged a *new* NSF Fee or OD Fee.  As discussed below, Defendant is wrong.  At least twenty-four courts across the country have rejected the same arguments Defendant makes here.

In the Second Circuit, Plaintiff is aware of eight consumer class action against financial institutions which have dealt with the issues in this case: *Roberts v. Capital One, N.A.*, 719 Fed. Appx. 33, (2d Cir. 2017); *Roy v. ESL Federal Credit Union*, No. 19-CV-6122-FPG, Dkt. 57 (W.D.N.Y. Sept. 30, 2020) (Plaintiff's Request for Judicial Notice ("RJN"), ¶ 11, Ex. 10). *Kelly*

*v. Community Bank, N.A.*, No. 8:19-CV-919 (MAD/CFH) (N.D.N.Y. Feb. 18, 2020) (RJN ¶ 13, Ex. 12); *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 640 (S.D.N.Y. 2020); *Lussoro v. Ocean Fin. Fed. Credit Union*, No. 18-cv-7400, 2020 U.S. Dist. LEXIS 71057, 2020 WL 1941236 (E.D.N.Y. Apr. 22, 2020); *Story v. SEFCU*, No. 1:18-CV-764, Dkt. 34 (N.D.N.Y. June 5, 2019) (RJN ¶ 5, Ex. 4); *McNeil v. Capital One Bank, N.A.*, No. 9-cv-00473-FB-RER, Dkt. 48 (E.D.N.Y. Sept. 29, 2020) (RJN ¶ 10, Ex. 9); and *Walker v. People's United Bank*, No. 3 :17-cv-00304(AVC), Dkt. 48 (D. Conn. March 30, 2018) (RJN ¶14, Ex. 13). In seven of these, the district courts have rejected the position being advocated by Defendant here.  In the eighth, *Roberts v. Capital One*, the Second Circuit Court of Appeals reversed the District Court granting of the motion to dismiss.  Defendant does not disclose any of these cases in its moving papers.

As discussed in more detail below, the language examined by these other courts across the country, in almost every instance, was *far* more favorable for the financial institution than the language at issue in this case.  That over thirty courts across the country have issued Orders interpreting nearly identical language in a manner as Plaintiff advocates here, at a minimum demonstrates that the Plaintiff's interpretation is not without a "reasonable basis for a difference of opinion." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990). As such, the Motion to Dismiss must be denied.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff only need provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555, 127 S.Ct. 1955). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, a court's review is ordinarily limited to

"the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

### III.    ARGUMENT

**A.    The First Practice: Defendant Breached the Contract By Charging NSF And OD Fees When There Was Enough Money In the Account to Cover The Transaction**

The first practice which Defendant argues should be decided on a Motion to Dismiss is one on which almost every court in the country that has looked at the issue has denied a Motion to Dismiss, and for which practice banks have been required to return tens of millions of dollars to their customers. (See for example, *In re TD Bank*, supra, MDL No. 2613, $71 million settlement granted Final Approval January 9, 2020.)

First, it bears stating that throughout almost the entirety of its Motion, likely because its Account Contract literally nowhere discloses that holds would be placed on pending debit card transactions, yet alone that such holds would be used to reduce the "balance" by which Bank determines whether to assess a fee, Defendant tries to set-up a strawman by pretending that the Complaint alleges there are <u>two</u> balances in an account, rather than <u>three</u> balances. *See, e.g.*, Motion at pp. 1-2, 7, 9-11, 14, 17  (discussing only "ledger balance" and "available balance") (Dkt. No. 15-1).  Ironically, even if that strawman were to be accepted, Defendant would still lose.   But in reality, the Complaint goes into great detail to allege there are three types of balances used by Defendant, and nowhere does Defendant acknowledge these allegations in its Motion. Specifically, the Complaint alleges there is the "balance," which is all of the money in an account; the "collected available balance," which is the "balance" less holds placed on deposited checks pursuant to a bank's "Funds Availability Policy; and" has nothing to do with debit card purchases or holds that might be placed on pending debit transactions; and, the "artificial available balance," which not only deducts holds on deposited checks for purposes of assessing an overdraft or NSF fee, but also goes a step further and deducts holds on pending debit card transactions. (Compl., ¶¶ 23-27.)

7

The Bank wants to ignore these allegations that there are <u>three</u> types of balances, not two, because it knows it did contract anywhere in the Account Contract that it would deduct pending debit card transactions from the balance in the account to determine whether to assess OD and NSF Fees, and therefore wants to pretend there are only two balances, and not three, which it uses. This naked argument by Bank that it uses only two balances and not three is factually false, and after discovery Plaintiff will move for summary judgment on that issue.  But even if it were true (which it is not), Bank would still lose on the merits as nowhere in the Account Contract does it state it would do this.  Rather than try to use snippets from the Account Contract with ellipsis as Bank uses in its Motion, this is the entirety of the Account Contract's explanation on NSF Funds:

### INSUFFICIENT FUNDS

You must maintain **a balance** in your Account that will cover the checks you write and any other debits or similar transactions (in-person withdrawals, ATM withdrawals or other electronic transactions) initiated by you, and other fees or charges applied to your Accounts, and you must promptly deposit funds **to cure a negative balance** in any of your Accounts. If you write a check or initiate other debits or similar transactions for **more money than you have in your Account**, we have the option to either pay the check or other debit or other similar transaction or return it unpaid. The Bank may determine whether your Account contains **sufficient funds** to pay a check, other debit or similar transaction at any time between the time the check or other debit or similar transaction is received by the Bank and the Bank's return deadline, and only one determination of the **Account balance** is required. **If that determination reveals insufficient funds** to pay the check or other debit or similar transactions, the Bank will not be required to honor the check or other debit or similar transactions. Alternatively, the Bank may honor the check or other item and create an overdraft. The honoring of one or more overdrafts, however, does not obligate the Bank to honor any future overdrafts, and you should not rely on the Bank to honor an overdraft. The Bank is not required to send you prior notice on checks or other debits or similar transactions returned for **insufficient funds**. We will impose a handling charge for each check or other debits or similar transactions **presented against insufficient funds**, whether or not we pay the check or other debits or similar transactions. Additionally, you agree to reimburse the Bank for any costs it incurs in collecting the overdraft from you including, without limitation, reasonable attorney's fees and the costs of litigation, to the full extent permitted by applicable law. If for any reason, a check you have deposited is returned for insufficient or uncollected funds, the Bank reserves the right to send it for collection through electronic means. In addition, if we receive an item for collection transmitted means from a depository bank, you have a right to request a copy from us. We do not charge fees for overdrafts caused by ATM withdrawals or one-time Point of Sale (POS)/Debit Card transactions.

(Dkt. No. 15-2, Page 2)[1] (Emphasis added everywhere in this Brief unless stated otherwise)

As the Court can see, nowhere does the above language state that a hold will be placed on pending debit card transactions to determine whether there are Insufficient Funds for purposes of assessing an OD or NSF fee.  In fact, nowhere does it even state that holds on deposits will be deducted from the "balance" or to determining whether there are "sufficient funds".  Further, although Bank repeatedly in its Motion uses the term it made up of "available balance", and argues to the Court what it would like for Court to assume that term means, not only is that term not defined anywhere, *it does not even appear* here.  The language used in the Account Contract comes very close, if not entirely already there, to state the exact opposite of what Defendant argues in its Motion.  As seen above, when Bank determines whether to assess an NSF Fee, it looks to whether the transaction involves "**more money than you have in your Account**" and whether there is "**a negative balance**."  The use of "negative balance" in this section, as alleged in the Complaint, makes the interpretation proffered by Defendant in its Motion improbable.  (Compl. ¶ 25.)

Defendant tries to argue in its Motion that somehow its statement in the Funds Availability section about holds on deposits in certain instances should be rewritten to say that it also means holds on pending debit card transactions, and also that it should be further rewritten to state that such holds might lead to OD or NSF Fees, when it actually says no such thing:

<b>FUNDS AVAILABILITY DISCLOSURE</b>

Our policy is to make a portion of the funds **from your deposit** available to you on the business day we receive your deposit and to make the remaining funds **from your deposit** available at a later date. Once the funds are available, we will use them to pay checks that you have written or you may withdraw them in cash. Please remember that even after we have made funds available to you, and you have withdrawn the funds, you are still responsible for the checks you deposit that are returned to us unpaid and for any other problems **involving your deposits**. Information concerning when funds **from your deposit** will be deemed available by the bank and available for your use is detailed below.  (Dkt. No. 15-2, Page 6)

As the Court can see, this section has absolutely nothing to do with holds on pending debit card transactions (the "artificial available balance", Complaint ¶ 25), and only has to do with holds

---

[1] The Account Contract was purported to be filed by a Declarant of Defendant.  As discussed below, it at a minimum fails to attach the Fee Schedule to it, and hence is not complete.

on deposits ("the collected available balance", Complaint ¶ 24). It also does not state these deposit holds can lead to fees.

As explained recently in an almost identical context by The Hon. Frank Geraci, Chief Judge of United States District Court for the Western District of New York, in *Roy v. ESL Federal Credit Union*, No. 19-CV-6122-FPG, Dkt. 57 (W.D.N.Y. Sept. 30, 2020) (RJN ¶ 11, Ex. 10):

> ESL further asserts that the Disclosure Agreement's Funds Availability Policy communicates that ESL will use the available balance to charge OD/NSF fees because it warns customers that funds will not always be immediately available after being deposited. ECF No. 30-2 at 10-11. But the Funds Availability Policy only deals with deposits: it "only explains how there may be a delay on funds coming into a member's account." *Salls*, 349 F. Supp. 3d at 88. It does not explain that funds might not be available due to pending withdrawals, which could also affect a customer's "available balance." *See id.* Nor does the Funds Availability Policy define "available balance" or discuss overdrafts. *See id.* It therefore fails to link the concept of availability of funds to OD/NSF fees.

But even worse for the Defendant Bank in this case than in *Roy*, at p. 3 the Account Contract in this case also states as follows about balances:

**STATEMENT BALANCE**

Statement **balance** reflects **the balance in your Account regardless of when we receive credit for noncash items** deposited by you as defined under our Funds Availability Policy.

When combined with the language in the Insufficient Funds section, this makes it impossible for Defendant to even credibly argue it was allowed to deduct holds on <u>deposits</u> when determining NSF Fees because, yet alone on debit cards, because, as shown, that NSF section states, "You must maintain **a balance** in your Account that will cover the checks you write and any other debits…," and this section defines "balance" to actually exclude holds on deposits.

Finally, on page 5 of that same Account Contract, a section titled "Subaccounts" states, "*The combined balances* of both subaccounts *will be used* for the master Account balance *for determining whether* monthly maintenance and *transaction fees apply*. (Dkt. No. 15-2, Page 6). This literally expressly contradicts the position advocated by Defendant in its Motion.

Other Courts which have examined account contract language infinitely more favorable for the financial institution than the language here have found it to be ambiguous. For example, in *Kelly v. Community Bank, N.A.*, No. 8:19-CV-919 (MAD/CFH) (N.D.N.Y. Feb. 18, 2020) (RJN ¶

10

13, Ex. 12), The Hon. Mae D'Agostino, of the Northern District of New York, held, "Both parties rely on a provision of the account agreement which states that "the Bank may, at its discretion, authorize and pay certain overdraft items when you do not have sufficient available funds in your account." See Dkt. No. 39-2 at 2. Based on this language, it is equally reasonable to understand that an overdraft fee is assessed at the time Defendant elects to make the payment, as Plaintiff asserts, or that an overdraft fee is assessed at the time of settlement of the transaction, as Defendant asserts. See Dkt. No. 39- 1 at ¶ 19; Dkt. No. 35-1 at 10. Because this material term is subject to more than one reasonable interpretation, it is ambiguous. Notably, similar language has been found to be ambiguous by the Second Circuit. *See Roberts v. Capital One*, N.A., 719 Fed. Appx. 33, 35 (2d Cir. 2017) (holding contractual language which stated "[the bank] may in our sole discretion, . . . elect to pay checks and other items drawn on your deposit account or to permit automatic bill payments and withdrawals against your account for an amount in excess of your available balance" was ambiguous)."

For further example, in *Lussoro v. Ocean Fin. Fed. Credit Union*, No. 18-cv-7400, 2020 U.S. Dist. LEXIS 71057, *12-13, 2020 WL 1941236 (E.D.N.Y. Apr. 22, 2020), The Hon. Pamela K. Chen held as follows: "At the very least, the Court finds that the language is ambiguous because the Contract does not define at what point in time an item 'is presented,' i.e., whether an item is presented at the point of authorization, when a consumer is engaging in a transaction with a merchant, or at the point of settlement, when the merchant is seeking payment from the bank. Either interpretation of 'is presented' is plausible."

Other federal courts which have examined account contract language far more favorable for the financial institution than the language here and have found it to be ambiguous, include:

> "To the extent count I [breach of contract] incorporates the sufficient funds theory…(i.e. the use of available balance to assess overdraft fees), the plaintiffs state a plausible claim for relief and count I survives the motion to dismiss. At the very least, there are outstanding factual questions on when TD Bank actually "advanced funds," whether imprecise use of the terms "negative balance" and "negative available balance" created a duty on the Bank's part to only assess overdraft fees when the "actual balance" was negative, and the like." *In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, MDL No. 2613 at 694;

 "Given that the Member Account Agreement is, at best, ambiguous as to the method to be used in determining whether an account has sufficient funds to pay an item, [the Plaintiff] has sufficiently stated a claim for breach of contract and breach of the implied covenant of good faith and fair dealing." *Advia Credit Union*, supra., 227 F. Supp. 3d 848, 854-56 (W.D. Mich. 2016);

"Northeast has not shown that the only reasonable meaning of 'enough money,' 'insufficient funds,' and 'nonsufficient funds' is the available balance.  The Account Agreement…could be reasonably understood to promise that overdraft fees would be charged only if a customer overdrew the actual balance in the account."  *Walbridge v. Northeast Credit Union,* 299 F. Supp. 3d 338, 343-46 (D.N.H. 2018);

"While the agreements refer to 'available funds,' 'insufficient funds,' 'insufficient available funds,' 'enough money' and 'account balance,' neither explicitly defines the meaning of those terms or how they relate to the calculation of overdraft fees. Moreover, nowhere in either agreement does JDCU explain that pending transactions will be deducted from the account holder's balance for purposes of calculating overdraft charges. Finally, while the Funds Availability Policy does notify account holders that "holds" will be placed on deposits in certain situations, it does not explain how the availability of funds relates to the calculation of overdraft fees." *Bettencourt v. Jeanne D'Arc Credit Union,* 370 F. Supp. 3d 258, 263-64 (D. Mass. 2019);

"Defendant did not properly define 'available balance' and its meaning is therefore ambiguous…[and] even if it was clear that Defendant subtracted pending transactions to calculate 'available balance,' neither of the Account Agreement sections pertaining to over-drafting nor the Opt In Agreement refer members to the Funds Availability Policy to find explanations of how their balance is calculated for purposes of overdrafts…. Accordingly, Plaintiff's breach of contract claim survives Defendant's motion to dismiss." *Salls v. Digital Fed. Credit Union,* 349 F. Supp. 3d 81, 87–89 (D. Mass. 2018);

"[T]he Account Agreement offers no clear explanation as to which balance method BOH uses…Although the Account Agreement has sporadic references to 'available' funds or balances, there is no statement, clearly understood by a reasonable customer, that BOH would use the available balance method when determining if an account was overdrawn." *Smith v. Bank of Hawaii*, No. 16-00513 JMS-RLP, 2017 WL 3597522, at *6–7 (D. Haw. Apr. 13, 2017);

"The court concludes that, as alleged in the complaint, there is a reasonable basis for a difference of opinion concerning the language of the 'Account Agreement.' Because the complaint alleges sufficient facts that PUB breached the 'Account Agreement,' PUB's motion to dismiss…for failure to state a cause of action is denied" because PUB's promise that it would "assess overdraft fees when there were 'insufficient funds' in the account to cover the transaction" was unclear as to the balance used.  *Walker v. People's United Bank,* 305 F. Supp. 3d 365, 374–75 (D. Conn. 2018);

"Plaintiff reasonably asserts that the agreement fails to define 'available balance,'…The Court cannot resolve this ambiguity on a motion to dismiss…[D]efendant's motion to dismiss…plaintiff's breach of contract claim is DENIED." *Ramirez v. Baxter Credit Union*, No. 16-CV-03765-SI, 2017 WL 1064991, at *4-5 (N.D. Cal. Mar. 21, 2017).

Further, the Eleventh Circuit, evaluating contract language again far more favorable to the financial institution than the language at issue here, last year held:

"Nothing in the Account Agreement explained how LGE determines whether funds are 'sufficient.'  Nor did the mere presence of the word 'available' in the Account Agreement…clearly communicate that LGE would calculate a consumer's account balance for the purpose of assessing overdraft fees based on unsettled transactions.  LGE 'apparently assumes that the [consumer] will read the word 'available'…and conclude that the financial institution uses the available balance calculation method in its overdraft service…LGE assumes too much…In the absence of anything in the Account Agreement addressing the account balance calculation method LGE used in its overdraft service for unsettled transactions and given the ambiguity of the terms 'sufficient funds' and 'available,' the Account Agreement failed to clearly indicate which balance calculation method LGE was using to determine when an unsettled debit transaction would result in an assessment of overdraft fees."

*Tims v. LGE Cmty. Credit Union*, No. 17-14968, 2019 WL 4019847, at *6 (11th Cir. Aug. 27, 2019).[2]  Similarly, the Second Circuit found the term overdraft ambiguous in the absence of a clear explanation of when an overdraft occurs. *Roberts v. Capital One, N.A.*, --- Fed. Appx. ---, 2017

---

[2] While Defendant argues this case is like *Chambers v. NASA Federal Credit Union*, 222 F. Supp. 3d 1, 10 (D.D.C. 2016), or *Domann v. Summit*, in reality, it is analogous to the cases set forth by Plaintiff, including *Tims* and *Smith v. Bank of Hawaii*, No. 16-00513 JMS-RLP, 2017 WL 3597522, at *7 (D. Haw. Apr. 13, 2017). For example, unlike the agreement in *Chambers*, which had an entire section titled "Available Balances to Make Transactions" that detailed how such a balance worked, Bank's agreement is silent.  Further, this Defendant's agreement does not even have the random references to the word "available" which were rejected as not enough to overcome ambiguity.  *Bank of Hawaii*, 2017 WL 3597522, at *7.  Customers cannot be expected to bear the burden of knowing banking terms of art Defendant never uses or defines. The court in *Domann* found that that case was distinguishable from did not use the word "available" in discussing overdrafts. *Id.* at *7. Here, though, the Funds Availability Policy does not mention overdraft procedures or policies.  Further, *Domann* settled on a classwide basis for $1 million to class members (RJN ¶ 8, Ex. 7 (Order approving final settlement in *Domann v. Summit Credit Union*, No. 3:18-CV-167-wmc (W.D. Wis. April 13, 2020) (Dkt. No. 78)), and *Page v. Alliant* is still being actively litigated, and had very different account language, including use of the word "available" and the plural use of the word "fees" when discussing NSF Fees on a transaction. (RJN ¶ 9, Ex. 8 (First Amended Complaint in *Page v. Alliant*, No. 1:19-cv-05965 (N.D. Ill. September 24, 2020) (Dkt. No. 73)). As Judge Gerachi stated in *Roy* about these cases, "This Court is more persuaded by the cases that denied the motions to dismiss."

WL 5952720, at \*2-\*3 (2d Cir. Dec. 1, 2017).[3]

      Finally, Defendant's proffered interpretation of focusing on the word "initiated" literally makes no sense.  Is Defendant arguing that it also charges an OD or NSF fee at the time of "authorization" ("initiates") even though Defendant also argues it does not charge an overdraft fee on debit card transactions? If that is Defendant's factual representation (it seems to be), then Defendant will find out when discovery starts in this case there is no financial institution in the country that imposes an overdraft fee at the time a transaction is "initiated," including not this Defendant.  Further, this argument also shows a complete misapprehension of Plaintiff's theory of the case on sufficient funds: Plaintiff contends that Defendant's contract stated that when it looks to whether the transaction involves "**more money than you have in your Account**", it did not state  Bank would deducts sums from the money in the account.  Defendant would like to rewrite its Account Contract language to say "**more money than you have in your Account after we deduct holds placed on pending debit card transactions and after we deduct holds placed on deposits.**"  But the Account Contract does not state that, not anywhere.

---

[3] Puzzlingly, Defendant also argues that Plaintiff has not alleged she was harmed by the conduct at issue. However, in Paragraph 57, although not required with this level of specificity, Plaintiff alleges multiple specific dates on which she was harmed by each of the two practices at issue in this case, and even the dollar amounts of the transactions at issue: "Plaintiff was harmed by Defendant's policy and practice of charging multiple fees on the same item...Glens Falls breached its contracts with Plaintiff by charging multiple NSF or overdraft fees on the same item, and by charging NSF or overdraft fees when there was enough money in the account to cover the transaction….on December 24, 2018, when Plaintiff had $73.58 in her account, she engaged in a transaction for $51.29, leaving $22.29 in her account, but was nonetheless charged a $32 "Overdraft Fee" for it.  As another example, on December 26, 2018, there was one transaction for $11.53, and another transaction for $19.94.  These two transactions were not paid by Defendant, but were declined, and a fee of $32 each, or $64, was charged for the two attempted items which were not paid.  These same two items of $11.53 and $19.94 were re-presented for payment on January 2, 2019, and were again declined by Defendant, and for declining these same two items a second time, Defendant again charged $32 per item for the re=presentment, or an additional $64 on top of the $64 already charged.  In other words, Defendant charged **$128** for declining the same two items which Defendant never paid, and which items amounted to only a total of **$31.47**.  Many more specific examples are presented in this Paragraph, and it also states even more examples will be found in Defendant's database.

At the motion to dismiss stage, "[u]nder New York law… judgment as a matter of law is appropriate if the contract language is unambiguous." *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003). To find a contract is unambiguous, "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990). A bank account contract that "contain[s] no provision defining a key term in dispute . . . or that requires searching for 'contractual hints' scattered throughout the documents is open to two 'reasonable . . . interpretations'" cannot serve as the basis for dismissal. *Ramirez v. Baxter Credit Union*, No. 16-cv-3765-SI, 2017 WL1064991, at *5 (N.D. Cal. Mar. 21, 2017). When the consumer "offer[s] a plausible interpretation" of how the credit union agreed to assess fees, dismissal before discovery and factual development is improper. *Gunter v. United Fed. Credit Union,* No. 3:15-cv-483-MMD, 2016 WL3457009, at *3 (D. Nev. June 26, 2016).

Ambiguities in a bank's descriptions of its fee practices in its account contract support claims for recovery of excessive fees at the motion to dismiss stage. In *Roberts v. Capital One Bank, N.A.*, 719 F. Appx. 33 (2d Cir. 2017), the Second Circuit reversed a dismissal order where its account agreement was ambiguous as to whether it could charge certain overdraft fees. Each party offered reasonable interpretations of Capital One's contract language, and at a minimum, the same is true here (although Plaintiff disputes that Defendant's interpretation is reasonable). The Second Circuit recently reiterated these bedrock contract interpretation principles in *Cox v. Spirit Airlines, Inc.*: "[a]n ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person . . . who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." 18-3484 (2d Cir. 2019) (citing *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.,* 595 F.3d 458, 466 (2d Cir. 2010)).

**IV.     The Second Practice: Defendant Also Breached the Contract By Charging Multiple NSF Fees On the Same "Item"**

**A.** **A Multitude of Courts Across The Country Have Rejected The Position Argued By Defendant Here, Including in the Second Circuit.  At The Very Best For Defendant, The Contract Is Ambiguous.**

Regarding the second practice at issue in this case, the Parties have a dispute regarding the meaning of a key term in Defendant's Account Agreement documents: "item." Plaintiff concedes that the contract gives Bank the right to charge a single $32 NSF Fee[4] for an "item" that is returned due to insufficient funds in a consumer's bank account. Plaintiff asserts that an "item" is the same "item" when it is reprocessed a second or third time after an initial return for insufficient funds, because "item" refers to an accountholder's order or instruction for payment (no matter how many times that order or instruction is re-processed by a bank or merchant). Because Plaintiff has pled a reasonable meaning of the disputed term to support her claims, the adhesion contract must be read in favor of the non-drafting party and dismissal of Plaintiff's claims is inappropriate.

Plaintiff's position is that "item" means a single electronic transaction.  A "re-presentment" or a "retry" of the same "item" does not change it into a new or different "item."  It is still the same "item" being presented by the same merchant in the same dollar amount, not a new "item."  An electronic item reprocessed after an initial return for insufficient funds, especially through no action by the customer, cannot and does not fairly become a new, unique additional "item" for fee assessment purposes.  Nowhere does the Bank's Account Contract state that multiple presentments of the same "item" allow it to charge multiple fees for that same "item," or that the NSF fee would be "for each presentment of the item" or "per presentment of the item."

Glens Falls' Fee Schedule further confirms that the NSF fee charge is to be "per item," and

**SCHEDULE OF FEES**

CHECKING ACCOUNTS
Overdrafts* and Checks Returned for Insufficient Funds     $32.00 per item
(returned and charged/paid and charged)

---

[4] NSF Fees, assessed when a bank *rejects* an attempted payment, differ from OD Fees, assessed when a bank *authorizes and pays* a transaction even though there are insufficient funds. When a bank pays an overdraft, a bank advances funds in return for the OD Fee it assesses. When, on the other hand, a bank *rejects* an electronic or check payment for insufficient funds, it is not paid and is often reprocessed repeatedly (through no action of the customer).

not "per each presentment of the item" as it clearly states as follows:[5]

It does not state "$32 per each presentment of an item" rather than "$32 per item."

A multitude of Courts across the country have now examined the arguments made by Defendant here, and almost every Court has rejected the argument, including numerous times in the Second Circuit.[6]  None of these cases were brought to this Court's attention by Defendant in

_____

[5] This excerpt of the Fee Schedule is from Paragraph 34 of the Complaint. It was not attached for some reason to Defendant's filing Dkt. No. 15-2 despite the declarant representing it was complete.  Plaintiff authenticates it with the concurrently filed Declaration of Taras Kick.

[6] *See Brown v. Educators Credit Union, No. 2019CV1814 (Racine Cty. Wis. Cir. Ct. July 1, 2020) (Plaintiff's RJN, ¶ 15, Ex. 514); Baptiste v. GTE Fed. Credit Union d/b/a GTE Fin., No. 20-CA-002928 (Hillsborough Co. Fla. Cir. Ct. July 8, 2020) (Plaintiff's RJN, ¶ 18, Ex. 17); Darty v. Scott Credit Union, No. 19L0793 (St. Clair Cty. Ill. Cir. Ct. June 24, 2020) (Plaintiff's RJN, ¶ 19, Ex. 18); Young v. The Wash. Trust Co., No. 1:10-cv-524-WES-PAS (D.R.I. June 2, 2020) (Plaintiff's RJN, ¶ 20, Ex. 19); Morris v. Bank of America, N.A., No. 18-cv-157-RJC-DSC, 2019 WL 1354928 (W.D.N.C. Jan. 8, 2019), report and recommendation adopted in part, 2019 WL 1421166 (W.D.N.C. Mar. 29, 2019) (denying motion to dismiss in challenge to multiple NSF Fees on the same item); Garcia v. UMB Bank NA, No. 1916-CV01874 (Jackson Co. Mo. Circuit Court Oct. 18, 2019), (Plaintiff's RJN, ¶ 21, Ex. 20) (same); Tisdale v. Wilson Bank and Trust, No. 19-400-BC (Davidson Co. Tenn. Chancery Court Oct. 17, 2019), (Plaintiff's RJN, ¶ 22, Ex. 21) (same); Tannehill v. Simmons Bank, No. 3:19-cv-140-DPM (E.D. Ark. Oct. 21, 2019) (Plaintiff's RJN, ¶ 23, Ex. 22) (same); Noe v. City Nat'l Bank of W. Va., No. 3:19-cv-0690 (S.D. W. Va. Feb. 19, 2020) (ECF No. 19), (Plaintiff's RJN, ¶ 24, Ex. 23) (same); Perri v. Notre Dame Federal Credit Union, No. 71C01–1909–PL–000332 (Ind. Cir. Ct. St. Joseph Cty. March 2, 2020) (Plaintiff's RJN, ¶ 15, Ex. 16) (finding additional fees could not be assessed each time an item is reprocessed because "these are the same item or transaction and they do not morph into a separate or new item simply because the third party presents the transaction for payment a second or third time."); Ingram v. Teachers Credit Union, No. 49D01–1908–PL–O25431 (Ind. Super. Ct. Marion Cty.) Feb. 18, 2020 (Plaintiff's RJN, ¶ 25, Ex. 24) (same); Almon v. Independence Bank, Case No. 19-CI-00817 (Ky. Cir. Ct., McCracken County Mar. 18, 2020) (Plaintiff's RJN, ¶ 26, Ex. 25) (with respect to the meaning of the term "item," the court held that "[b]oth [parties'] interpretations are reasonable; therefore, the Court finds that the contract is ambiguous"); McMurrin v. America First Credit Union, Case No: 190909065 CN (3rd District Court, Salt Lake County, Utah) (May 5, 2020) (Plaintiff's RJN, ¶ 27, Ex. 26) (same); Romohr v. The Tennessee Credit Union, No. 19-1542-BC (Davidson Co. Tenn. Chancery Court May 19, 2020) (Plaintiff's RJN, ¶ 17, Ex. 16) ("there is no definition of 'item' in the Account Agreement or Fee Schedule, and that does lend some ambiguity to the analysis of whether or not an authorized ACH is one item, or is an item each time it is submitted. The Fee Schedule does not clarify this ambiguity because it just says 'Non-Sufficient Funds (NSF): $32 (all types).'"); Vocaty v. Great Lakes Credit Union, No 19-L-727 (Lake Cty. Cir., Ill. June 3, 2020) (Plaintiff's RJN, ¶ 28, Ex. 27) ("As to the NSF for assessing fees  each time a merchant submits a single charge to be paid, there is no language within the contract that unambiguously authorizes multiple charges...taking plaintiff's allegations to be true, a trier of fact could*

its Motion.  These decisions are part of a tsunami of cases finding that "per item" disclosures just like this Defendant's are, at best, ambiguous and denying motions to dismiss exists. Plaintiff's basic premise— that it is at best ambiguous whether an "item" become a new "item" or new "transaction" when re-presented two or three times—has repeatedly been upheld in numerous cases Defendant totally ignores.

For example, in *Roy v. ESL Federal Credit Union*, No. 19-CV-6122-FPG, Dkt. 57 (W.D.N.Y. Sept. 30, 2020) (RJN ¶ 11, Ex. 10), the court held, regarding the term "item" (which like in this case also was not defined in the *ESL* case), "The Court finds that both parties' interpretations of this provision are reasonable and thus the provision is ambiguous." *Roy* further stated: "Under Plaintiff's interpretation, 'item' could reasonably refer to an original, customer-authorized transaction, which, no matter how many times it is resubmitted, is still the same transaction. 'Each item' would therefore refer to a single transaction and could only incur one fee." "[T]he Account Agreement does not define 'item' and the parties dispute its meaning," therefore "the cases cited by Plaintiff to be more persuasive, especially since ambiguities must be resolved in Plaintiff's favor."  For further example, in *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635 (S.D.N.Y. 2020), the Hon. Valerie Caproni of the Southern District of New York held:

> the definition of 'item' is ambiguous with regard to whether a resubmission of an ACH transaction is a separate item or is part of the same initial ACH transaction, and that ambiguity must be read in favor of Plaintiffs at this stage. Because Plaintiffs' proposed construction is a reasonable construction of the Agreement, Plaintiffs have sufficiently alleged a breach resulting from multiple overdraft charges imposed as a result of resubmissions of a single ACH transaction.

444 F. Supp. 3d at 640.  As the court in *Perks* held with respect to the word "transaction," it is plausible to understand the term "ACH transaction" as "encompass[ing] all resubmissions associated with a single transaction." *Id.* at 641.

Similarly, in *McNeil v. Capital One Bank, N.A.*, No. 9-cv-00473-FB-RER, Dkt. 48

---

*reasonably infer that "item" is defined by the initial charge made by [the credit union's] customer, not each time a merchant submits it to.");  Duncan v. BancFirst, No. CJ-2020-348 (Dist. Okla. Cty. June 3, 2020) (Plaintiff's RJN, ¶ 29, Ex. 28, denying motion).*

(E.D.N.Y. Sept. 29, 2020) (RJN ¶ 10, Ex. 9), Senior United States District Judge Frederic Block for the Eastern District of New York, held that the parties' respective interpretations of the term "item" were reasonable, "and a 'claim predicated on a materially ambiguous contract term is not dismissible on the pleadings.'"

In *Coleman v. Alaska USA Fed. Credit Union*, No. 3:19-CV-0229-HRH, 2020 WL 1866261, at \*4 (D. Alaska Apr. 14, 2020), Senior Judge Russel Holland, denied a nearly identical Motion to Dismiss, because it "is plausible that a member could have expected to only be charged one NSF fee when she only gave one authorization for an ACH transaction, ***no matter how many times the merchant presented the transaction for payment***." *Id.*

In *Perri*, the court found in denying a motion to dismiss in an essentially identical claim:

> ***The Court agrees with Plaintiff that ultimately these are the same item or transaction and they do not morph into a separate or new item simply because the third party presents the transaction for payment a second or third time***. It is incumbent on Defendant to identify language in its contract with Plaintiff that unambiguously provides that a separate or additional NSF or overdraft fee could be imposed on the same transaction. The Agreement before the Court in this case does not do so.

RJN, ¶ 16, Ex. 15, at 6 (emphasis added).

In *Almon*, with respect to the meaning of the term "item," the court held that "[b]oth [parties'] interpretations are reasonable; therefore, the Court finds that the contract is ambiguous." RJN, ¶ 16, Ex. 16. In *Romohr v. The Tennessee Credit Union*, No. 19-1542-BC (Davidson Co. Tenn. Chancery Court May 19, 2020), RJN, ¶ 17, Ex. 16, the court considered the same multiple NSF practice Plaintiff challenges here. After reviewing the operative contract documents, the court found that, like here, "there is no definition of 'item' in the Account Agreement or Fee Schedule, and that does lend some ambiguity to the analysis of whether or not an authorized ACH is one item, or is an item each time it is submitted. In *Baptiste v. GTE*, RJN, ¶ 6, Ex. 6 at 6, the court noted that "*item* is a term subject to multiple constructions" and nothing in the fee schedule "address[ed] the present situation, which can occur and does occur, apparently at the sole discretion of GTE and the payee, not the account owner." *Id.* at 5 (emphasis in original). The court thus found

19

ambiguity regarding the assessment of fees in such circumstances and determined that the plaintiff's understanding of "item" to mean an accountholder instruction for payment was reasonable. *Id.* at 5-6; *see also Darty*, RJN, ¶ 7, Ex. 7, at 12-15 (Denying motion to dismiss when the account agreement "plainly promise[d] to only assess 'a charge for each item'" and "nothing in the 2018 Agreement . . . unambiguously authorize[d] multiple charges on the same item returned for insufficient funds.").

There is nothing that distinguishes Defendant's contractual promises from the ones made by other defendants in the cases above. As this robust body of case law shows, the same check, automatic bill payment, or other electronic payment on an account is not reasonably a new "item" each time it is rejected for payment then reprocessed, especially when – as here – Plaintiff took no action to resubmit the item. The Account Contracts do not say that the same item is eligible to incur multiple NSF Fees. At best, they are ambiguous on this point.[7]

Further, this multiple NSF Fee practice is not universal. For example, Chase charges a maximum of one NSF Fee per item. And as indicated by Chase's disclosures, an "item" maintains its integrity even if multiple processes are effected on it: "If we return the same item multiple times, we will only charge you one Returned Item Fee for that item within a 30-day period." RJN ¶ 3, Ex. 2. First Financial Bank, another major bank, engages in the same abusive multiple fee practice, however unlike Defendant it expressly provides in its deposit agreement that "[m]erchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment

---

[7] Defendant here also has the additional problem that in the Account Contract, at page 3, Defendant states that it create "an overdraft" (singular) when it determines a customer does not have enough money in the account to cover an "item." It states "the Bank may honor **the check or other item** and create **an** overdraft." In other words, the Account Agreement drafted by Defendant itself states in the singular, "**an** overdraft" will be charged, not the plural "**multiple non-sufficient funds fees or overdrafts,**" will be charged for an overdrawn "item," and does not say for "each presentment of an item." Nowhere does the contract state that multiple presentments of the same "item" allow it to charge multiple fees for that same "item" or that it would be "for each presentment of the item" or "per presentment of the item."

is considered an item and will be charged accordingly." (Compl., ¶ 40.)  This disclosure and many other examples are provided in the Complaint, at ¶¶ 36-53.

Unlike these numerous other financial institutions, Defendant does not disclose or contract that it assesses multiple NSF fees on a single item, or charges "per each presentment." These disclosures are important because (a) they indicate that the precise practice challenged here—assessment of Multiple Fees on the same item— is commonly expressly disclosed in banking, and (b) they show there is a broad usage throughout banking where "item" means what Plaintiff says it means in the absence of contract language defining that key term otherwise.  Defendant, not Plaintiff, offers an unusual, unanticipated definition of the common term "item," one the Court should construe as unreasonable for the contract.

**B.    Defendant's Position Is Also Contradicted by NACHA, Which Uses a Similar Term ("Entry") As Plaintiff and Allows Authorizations Only From Accountholders**

Defendant also tries to make an argument for its interpretation of the word "item" under the rules and guidance of the National Automated Clearing House Association ("NACHA"). But under those rules, and as a matter of *fact*, the only meaning possible for the term "item" is the meaning Plaintiff proffers.  The definition of "item" advocated by Defendant is literally impossible under the NACHA because, *inter alia*, an "item" is not a new "item" when it is reprocessed, and Plaintiff's attempted ACH took place over the NACHA system.

The NACHA Rules allow a financial institution to "return" an ACH payment request for "any reason." NACHA, Operating Rules & Guidelines § 3.8 (2013). Under NACHA's terminology, a request for payment via the ACH network is called an "Entry." A financial institution's return of an "Entry" without payment is called a "Return Entry." See id. §§ 8.33, 8.79. When an entry is returned for insufficient funds, NACHA's rules allow a merchant to make additional attempts to obtain payment by "re-presenting" (or "reinitiating") the returned entry. *See id.* § 2.12.4.2. To ensure that the receiving financial institution recognizes that the merchant's payment request is a "re-presented" entry rather than a new one, the request must "contain the identical data as the original" entry and include the label "RETRY PYMT." *See id.* App. 4. The

rules prohibit a merchant from altering a previously returned entry to look like a new entry. *Id.* Thus, the rules thus make clear that a "re-presented" entry is just another request for payment of the original entry, not a separate entry (or "item") that could trigger an additional fee.

NACHA Rules also are clear than an "Entry" is the same "Entry" when reprocessed unless the merchant receives a new authorization from the consumer for the payment amount. Id. <u>The NACHA Rules, in other words, make clear that such authorizations can only come from accountholders, not from merchants</u>. Therefore, it is not definitionally possible, as Defendant urges, for an "item" which has been  re-submitted to become a new item because such authorizations can only come from accountholders, and it is undisputed that a "Retry" does not come from the account holder.  This conclusion also accords with the banking industry's definition of the word "item." An "item," in its trade usage, is a "negotiable instrument or a promise or order to pay money handled by a bank for collection or payment."[8] The term thus means an order by the accountholder to pay— not a third party's resubmission of a previous payment request.

This industry usage is also consistent with the nature of a merchant's second request for payment under the NACHA rules. Under the rules' terminology, a merchant's request for payment via the ACH network, pursuant to an instruction for payment by the consumer, is called an "Entry," which "*shall be deemed an 'item'* within the meaning of" the U.C.C.[9] NACHA's rules specifically <u>prohibit</u> a merchant from altering a re-presented entry in an attempt to make it look like a customer has authorized a <u>new</u> payment request.[10] The rules thus make clear that a "re-presented" entry is just another request for payment of the original entry, not a separate entry (or "item"). To ensure that the receiving financial institution recognizes that the merchant's payment request is a "re-presented" entry rather than a new one, the request must "contain the identical data as the original" entry and include the label "RETRY PYMT." *See id.* App. 4. The rules prohibit a merchant from

---

[8] *Item*, Black's Law Dictionary; *Turner v. Comm'r of Internal Rev.*, 303 F.2d 94, 95 (4th Cir. 1962) (using "debit item" in that sense)
[9] *See* NACHA Operating Rules & Guidelines § 8.33 (emphasis added).
[10] *See ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles and Responsibilities of ODFIs and RDFIs*, *NACHA* (2014), https://perma.cc/A4PF-PWMR.

altering a previously returned entry to look like a new entry. *Id.* NACHA Rules also are clear that an "Entry" is the same "Entry" when reprocessed *unless* the merchant receives a *new authorization from the consumer* for the payment amount. *Id*. The NACHA Rules, in other words, make clear that such authorizations can only come from accountholders, not from merchants. Indeed, in *Tannehill*, plaintiff sued over the assessment of more than one NSF Fee on the same item, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. Simmons Bank moved to dismiss, arguing that the contract permitted the fees. The district court denied the motion to dismiss, explaining that the parties' arguments, which concern both the contract's meaning and "the rather complicated ACH rules," meant "the Court [was] unable....to hold unequivocally at the threshold that [Plaintiff's] breach claim fails as a matter of law." Id. at *2.

Defendant argument that each time a merchant submits an item for payment, it is a new transaction contradicts the NACHA Rules (as discussed above). A merchant cannot, on its own, create a new payment or transaction. Only an accountholder can do that, and Ms. Richard only did that once.

In the directly analogous *Morris* case, which was against Bank of America, plaintiffs lodged identical claims regarding the assessment of multiple NSF Fees on the same item as here. Relying on numerous other bank fee cases, the court denied the motion to dismiss:

> Plaintiffs base their breach of contract claim on both express breach and breach of the implied covenant of good faith and fair dealing. *See, e.g., In re HSBC Credit Union*, 1 F. Supp. 3d 34, 54 (E.D.N.Y. 2014) (allowing claim to proceed despite HSBC's argument that it had contractual authority to post debit transactions from high to low); *Gutierrez v. Wells Fargo*, 622 F. Supp. 2d 946, 954 (N.D. Cal. 2009) (allowing claim to proceed despite Wells Fargo's argument that it had contractual authority to post items to checking account in any order the bank chose); *White v. Wachovia Credit Union, N.A.*, 563 F. Supp. 2d 1298, 1363 (N.D. Ga. 2008) (declining to dismiss plaintiff's breach of the implied covenant of good faith and fair dealing at the motion to dismiss stage when plaintiff alleged that Wachovia "breached the contract provisions [of its Deposit Agreement] de facto even if it maintained performance de jure" in manipulating transactions to maximize overdraft fees); *Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 453–54 (2006) ("[W]here the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith.")…Applying these precedents to the facts alleged here, Plaintiff have sufficiently alleged a breach of contract claim under both theories.

*Morris v. Bank of Am., N.A.*, No. 3:18-CV-157-RJC-DSC, 2019 WL 1274928, at *2 (W.D.N.C. Jan. 8, 2019) (additional citation omitted).[11]

This Court should adopt the reasoning of the multitude of cases, including those in the Second Circuit such as *Perks, Roy,* and *McNeil,* and deny the Motion. Ambiguities in descriptions of banks' and credit unions' fee assessment methods contained in account contracts support consumer claims for recovery of excessive fees, at least at the motion to dismiss stage.

**V.    Plaintiff Has Sufficiently Plead a Violation of the Covenant of Good Faith and Fair Dealing**

Defendant violates the covenant of good faith and fair dealing by unfairly exploiting contractual discretion, contrary to the reasonable expectations of accountholders. "In New York, all contracts contain an implied covenant of good faith and fair dealing, under which 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Claridge v. N. Am. Power & Gas, LLC*, No. 15-CV-1261 PKC, 2015 WL 5155934, at *6 (S.D.N.Y. Sept. 2, 2015) (quoting *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002)). "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Id.* (quoting *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)). "[C]ourts employ the good faith performance doctrine to effectuate the intentions of the parties, or to protect their reasonable expectations." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990).

As Judge Block held in *McNeil* (RJN ¶10, Ex. 9, p.3), "Capital One next argues that Plaintiff's claims for breach of contract and the covenant of good faith and fair dealing are dismissible as (1) Capital One charged fees in accordance with the Account Agreements and

---

[11] *See also Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS, 2018 WL 1757609, at *7 (S.D. Cal. April 12, 2018) (denying motion to dismiss because plaintiffs offered reasonable interpretation in face of contractual ambiguities); *See also Pinkston-Poling*, 227 F. Supp. 3d at 854- 855; *Gunter*, 2016 WL 3457009, at *2-3; *Wodja*, 2016 WL 3218832, at *2-3.

thus did not breach any contractual terms; (2) Plaintiff did not, himself, comply with the Account Agreements; and (3) Plaintiff may not claim breach of an implied covenant when the predicate conduct is the same as for Plaintiff's breach of contract claim. The Court disagrees with each assertion…[N]or has Capital One shown that Plaintiff's "implied covenant claim" should be dismissed as "duplicative of his breach of contract claim."…At this early stage of a proceeding, plaintiffs are "entitled to plead alternative and inconsistent causes of action and to seek alternative forms of relief." *Gold v. 29-15 Queens Plaza Realty, LLC*, 841 N.Y.S.2d 668, 669 (2d Dept. 2007)."

**VI.**    **Plaintiff Has Sufficiently Plead a Violation of the Common Counts.**

Plaintiff alleges the common counts of Money Had and Received and Unjust Enrichment n the alternative.   Plaintiff does not intend to attempt to seek a double recovery.   As Judge D'Agostino held on the issue of these two claims in another consumer class action which alleged improper overdraft fees and improper repeat NSF fees, *Story v. SEFCU*, No. 1:18-CV-764, Dkt. 34 (N.D.N.Y. June 5, 2019), "Under New York law, "claims for unjust enrichment and money had and received are identical." *J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 129 n.1 (N.D.N.Y. 2008)…[A]t this stage of the proceedings, the Court does not know for a fact whether a contract exists between Plaintiff and Defendants. Thus, the unjust enrichment claim may proceed. *See GlaxoSmithKline LLC v. Beede*, No. 1:13-CV-00001, 2014 WL 896724, *7 (N.D.N.Y. Mar. 6, 2014) (permitting both the contract claim and unjust enrichment claim to proceed where the parties "disagree[d] as to the terms and even existence of a valid contract").

**VII.**    **Plaintiff Has Sufficiently Plead a Violation of  GBL §349**

Defendant argues for three sentences at page 20 of its Motion that the GBL §349 claims should be dismissed because Defendant "at all times acted in accordance with the unambiguous terms of the Account Agreement." However, as already demonstrated above, those terms were anything but "unambiguous," and to the extent they are, they are unambiguous in favor of Plaintiff's position, not Defendant's.  Defendant's reading of the contract is just as wrong with respect to whether the language is deceptive and whether its unfair fee practices are allowed

under the contract.[12] Moreover, whether or not the documents are materially misleading is a factual matter, appropriately left at this stage for the finder of fact.[13]

Plaintiff has adequately alleged that Defendant engaged in deceptive business acts and practices under the GBL by making false promises regarding its fee practices. Similar allegations have long been upheld in analogous cases where contract language is misleading. *See, e.g., Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) (allegations sufficient because the "peculiar (and syntactically difficult) wording of [agreement]" made it so "a consumer would not necessarily expect that Hotels.com [would] collect more in taxes than it is actually required to collect by law[.]")

Further, Plaintiff may properly bring a § 349 claim and a breach of contract claim simultaneously. *See* Fed. R. Civ. P. 8(a); *Gold v. 29-15 Queens Plaza Realty, LLC*, 841 N.Y.S.2d 668, 669 (App. Div. 2007) (citing cases). *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107 (2d Cir. 2017) involved breach of contract and GBL claims that both involved an insurer's failure to reimburse labor costs in accordance with competitive rates. *Id.* at 125. The Second Circuit stated that while defendant "argues that the § 349 claims [] fail because they do not allege an injury independent of their contract damages [] [t]he cases on which [defendant] relies, however, do not establish such a requirement." *Id.*[14] In the Second Circuit, this year both

---

[12] *See e.g. In re Checking Account Overdraft Litig.*, 694 F.Supp.2d 1302, 1325 (S.D. Fla. 2010) (applying New York law, "Plaintiffs are alleging that the actions of Defendant banks, in manipulating and reordering Plaintiffs' debit transactions, are deceptive and do not comply with the terms of the contract. Plaintiffs therefore sufficiently allege a "deceptive practice."); *Goldman v. Simon Property Group, Inc.*, 869 N.Y.S.2d 125, 129-30 (2d Dep't 2008) (allegation that fee was deceptive and not conspicuously disclosed sufficient to state a cause of action under GBL § 349); *Negrin v. Norwest Mortg., Inc.*, 700 N.Y.S.2d 184 (2d Dep't 1999) (allegations of a bank's unilateral imposition of fees upon its customers state a valid GBL § 349 claim).

[13] *Segovia v. Vitamin Shoppe, Inc.*, 14-CV-7061-NSR, 2017 WL 6398747, at *7 (S.D.N.Y. Dec. 12, 2017); *People ex rel. Schneiderman v. Orbital Publ'g Grp.*, 21 N.Y.S.3d 573, 586 (N.Y. Sup. Ct. 2015).

[14] *See also Donnenfeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 224 (E.D.N.Y. 2018) (applying *Nick's Garage*, not *Spagnola*, and declining to dismiss a § 349 claim stating that New York law does not require that a GBL injury be independent of alleged breach of contract damages); *Carias ex rel. Matos v. Monsanto Co.*, No. 15-CV-3677-JMA, 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016)

the *Roy* court and the *Lussoro* court denied motions to dismiss the § 349 claims for these reasons. Ms. Richard can plead alternative theories.  And in the Northern District of New York, the court held as follows on this claim in *Story*: "Finally, Plaintiff alleges that Defendants' practice of charging overdraft fees even where the customer's account contained enough funds to cover the transaction was a deceptive act in violation of New York General Business Law § 349. *See* Dkt. No. 1 at ¶ 84. Because Plaintiff has alleged that she was harmed by Defendants' unlawful business practice of improperly charging overdraft fees, the Court finds that Plaintiff has standing to bring this claim." RJN ¶ 5, Ex. 4, p. 13.

**VIII.   <u>Paragraphs 20 and 21 of The Complaint Should Not Be Stricken.</u>**

Defendant also argues to strike Paragraphs 20 and 21 from the Complaint because they pertain to a particular type of Regulation E transaction in which Defendant represents it does not engage. As alleged in the Complaint, it is on information and belief that Defendant engaged in this program, and discovery will be necessary to determine whether this program existed.  But even if it did not, the two Paragraphs further demonstrate the importance of the consumer issue at stake here to the public, and therefore are relevant to the GBL claim.  An improper OD Fee on a non-Regulation E transaction is as important as one on a Regulation E transaction.  Further, there certainly is nothing "scandalous" about these allegations.  By the time of a jury trial, discovery will further sort out whether it is appropriate for them to remain in the Complaint.

## IX.   <u>CONCLUSION</u>

For the above stated reasons, Ms. Richard respectfully requests that Defendant's Motion is denied in its entirety. Alternatively, if the Court were not to deny the Motion, Plaintiff respectfully requests leave to amend.

Dated: October 19, 2020                          Respectfully submitted,

---

(finding unpersuasive argument that loss under GBL § 349 must be independent of the loss caused by the alleged breach of contract).

By:    */s/ Taras Kick*        
Taras Kick (*admitted pro hac vice*)
taras@kicklawfirm.com
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088

**WILENTZ, GOLDMAN & SPITZER, P.A.**
Kevin P. Roddy – NYSBA # 652585
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095
Telephone: (732) 636-8000
Facsimile: (732) 726-6686
E-mail: kroddy@wilentz.com

**Cherundolo Law Firm, PLLC**
J. Patrick Lannon
Email: plannon@cherundololawfirm.com
AXA Tower One 17th Floor
100 Madison Street
Syracuse, NY 13202
315-449-9500

John C. Cherundolo
Email:jcherundolo@cherundololawfirm.com

AXA Tower One 17th Floor
100 Madison Street
Syracuse, NY 13202
315-449-9500
Fax: 315-449-9804

Attorneys for Plaintiff Daphne Richard
and the Putative Class

28

**CERTIFICATE OF SERVICE**

I, Taras Kick, hereby certify that on the 19th day of October, 2020, the foregoing

document, filed through the CM/ECF System, will be sent electronically to the registered

participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent

to those indicated as non-registered participants.


 /s/ *Taras Kick*_____
Taras Kick