**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAPHNE RICHARD, ET AL. | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Case No. 1:20-CV-00734-BKS-DJS |
| | ) |
| GLENS FALLS NATIONAL BANK, | ) |
| | ) |
| Defendant. | ) |

**REPLY IN FURTHER SUPPORT OF DEFENDANT**
**GLENS FALLS NATIONAL BANK'S:  (1) MOTION TO DISMISS; AND**
**(2) MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**

Defendant Glens Falls National Bank and Trust Company respectfully submits this reply in further support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the entire Complaint filed by Plaintiff Daphne Richard and its motion to strike pursuant to Federal Rule of Civil Procedure 12(f).   For the reasons herein, and those in Defendant's initial memorandum, this Court should (1) dismiss Plaintiff's Complaint in its entirety with prejudice because its fails to state a claim upon which relief can be granted; and/or (2) strike certain immaterial and impertinent allegations therein.

Dated: October 26, 2020                              Respectfully Submitted,

                                                                    **THOMPSON COBURN LLP**

                                                                    By: /s/ Lukasz Sosnicki
                                                                           Lukasz Sosnicki
                                                                           2029 Century Park East, 19th Floor
                                                                           Los Angeles, CA 90067
                                                                           (310) 282-2538
                                                                           (310) 282-2501 (fax)
                                                                           lsosnicki@thompsoncoburn.com

                                                                           *Attorneys for Defendant Glens Falls*
                                                                           *National Bank*

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 1

    A.    Ms. Richard Has Not Pleaded a Viable Breach of Contract Claim. ...................... 1

    B.    Ms. Richard's Breach of Contract Case Is Implausible Based on the
Language of Her Account Agreement with Glens Falls. ........................................ 1

        1.    The Account Agreement Cannot Reasonably Be Understood to
Require Ms. Richard to Only Maintain a Balance that Would
Cover All Settled Transactions. .................................................................. 1

        2.    The Account Agreement Cannot Reasonably Be Understood to
Limit NSF Fees to One Regardless of How Many Times a Debit Is
Presented and Returned ................................................................................ 6

    C.    Ms. Richard's Claim for Breach of an Implied Covenant Fails Because
Glens Falls Imposed Its Fees in Accordance with the Account Agreement. .......... 9

    D.    Ms. Richard's Quasi-Contract Claims Fail Because She Admits the
Account Agreement Governs the Banking Relationship Between the
Parties. .................................................................................................................. 9

    E.    Ms. Richard Cannot State a Claim under NYGBL § 349. ..................................... 9

    F.    The Court Should Strike Inapplicable Portions of the Complaint. ....................... 10

CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................6

*Chambers v. NASA Fed. Credit Union,* 222 F. Supp. 3d 1 (D.D.C. 2016) ...............4, 5

*Coach, Inc. v. Kmart Corps.,* 756 F. Supp. 2d 421 (S.D.N.Y. 2010) ............................10

*Domann v. Summit Credit Union*, No. 18-CV-167-WMC (W.D. Wis. Sept. 13, 2018) ................................................................................................................4

*Kelly v. Community Bank, N.A.*, No. 19-CV-919 (MAD/CFH), ECF 42 (N.D.N.Y. Feb. 28, 2020) ..........................................................................................2

*Lambert v. Navy Fed. Credit Union,* No. 1:19-CV-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019) ..................................................................6, 7

*Loudon Plastics, Inc. v. Brenner Tool & Die, Inc.*, 74 F. Supp. 2d 182 (N.D.N.Y. 1999) ...........................................................................................................9

*Lussoro v. Ocean Fin. Fed. Credit Union,* 456 F. Supp. 3d 474 (E.D.N.Y. 2020) .........................3

*Page v. Alliant Credit Union,* 19-CV-5965, 2020 WL 5076690 (N.D. Ill. Aug. 26, 2020) ................................................................................................. *passim*

*Patchen v. Gov't Employers Ins. Co.,* 759 F. Supp. 2d 241 (E.D.N.Y. 2011) ................9

*Perks v. TD Bank, N.A.,* 444 F. Supp. 3d 635 (S.D.N.Y. 2020) ...........................6, 9, 10

*Roberts v. Capital One, N.A.,* 719 Fed. Appx. 33 (2d Cir. 2017) ................................2, 5

*Roy v. ESL Federal Credit Union*, No. 19-CV-6122-FPG, Dkt. 57 (W.D.N.Y. Sept. 30, 2020) ..............................................................................................3, 5

*Spinac v. Carlton Grp., LTD.,* 99 A.D.3d 603, 952 N.Y.S.2d 870 (N.Y. 2012) ...........8

*Story v. SEFCU*, No. 18-CV-764, ECF 34 at p. 5 (N.D.N.Y. June 15, 2019) ................2

*Wenger v. Alidad,* 696 N.Y.S.2d 227 (N.Y. App. Div. 2d Dept. 1999)..........................1

**Statutes and Constitutional Provisions**

New York General Business Law § 349 .................................................................9, 10

**ARGUMENT**

**A.    Ms. Richard Has Not Pleaded a Viable Breach of Contract Claim.**

Ms. Richard has not pleaded sufficient facts demonstrating how Glens Falls' use of any particular balance-calculation method led to the overdraft fees that she incurred.  There are no facts in the Complaint stating the amount of Ms. Richard's "available" or "ledger" balance at any time,[1] including when Glens Falls assessed the fees at issue.  The Complaint therefore fails to state basic and essential facts showing Glens Falls breached the Account Agreement by using one method versus another.  *See Wenger v. Alidad,* 696 N.Y.S.2d 227, 228 (N.Y. App. Div. 2d Dept. 1999) (holding breach of contract damages must be "reasonably certain *and directly traceable to the breach*") (emphasis added) (internal quotations and citations omitted).  Ms. Richard responds only in a footnote, noting the Complaint contains sufficient facts because its alleges "multiple specific dates on which she was harmed" and "even the dollar amounts of the transactions at issue."  ECF 16, at p. 14, n.3.  But neither the dates nor the dollar amounts of the transactions demonstrate that Ms. Richard would *not* have been harmed if Glens Falls used the "ledger" balance instead of the "available" balance.  The claim is therefore insufficiently pleaded and fails.

**B.    Ms. Richard's Breach of Contract Case Is Implausible Based on the Language of Her Account Agreement with Glens Falls.**

1.    <u>The Account Agreement Cannot Reasonably Be Understood to Require Ms. Richard to Only Maintain a Balance that Would Cover All Settled Transactions.</u>

Ms. Richard contends that "almost every court in the country" has denied motions to dismiss based either on "far more favorable" or "identical" account-agreement language concerning overdraft fees.  But she fails to identify any such language or explain how such

---

[1] As discussed in more detail below, Ms. Richard's attempts to inject three types of balances into this litigation are nothing more than a red herring.  But even using Ms. Richard's proposed terminology, the Complaint does not provide the "balance," the "collected balance," or the "artificial available balance" of Ms. Richard's account at the time the fees were assessed.

language is more favorable or identical.  *See* ECF 16, at p. 6.  To survive dismissal *in this case*, Ms. Richard must plausibly allege she understood Glens Falls would not take into account any pending transactions—including holds on pending debit transactions—when assessing overdraft and NSF fees.  She cannot do so because her Account Agreement specifically informs her what account balance Glens Falls requires her to maintain to avoid any such fees.  *See* Account Agreement, at p. 2 (explaining Ms. Richard "must maintain a balance in [her] Account that will cover the checks [she] write[s] and any other debits or similar transactions (in-person withdrawals, ATM withdrawals or other electronic transactions) **initiated by [her]** and any other fees or charges applied to your Accounts[.]") (emphasis added).  There is no way to interpret language requiring Ms. Richard to maintain a balance that will cover all "initiated" transactions to mean she may "initiate" transactions that exceed the account's balance but Glens Falls will not (and cannot under the Account Agreement) take holds on pending transactions into account when assessing its fees.

Notably, **not a single case Ms. Richard cites in her opposition addressing issues similar to the "available" versus "ledger" balance involves an account agreement containing language specifically explaining the customer must maintain a balance that covers all "<u>initiated</u>" transactions**.  This includes all of the prior decisions by New York federal courts.[2]

---

[2] These cases are:

> **<u>*Roberts v. Capital One, N.A.*, 719 Fed. Appx. 33, 35 (2d Cir. 2017)</u>:**  The applicable agreement is silent on what balance a customer must maintain, stating only that "[w]e may in our sole discretion, and without obligation, elect to pay checks and other items drawn on your deposit account or to permit automatic bill payments and withdrawals against your account for an amount in excess of your available balance (an "Overdraft")."

> **<u>*Story v. SEFCU*, No. 18-CV-764, ECF 34 at p. 5 (N.D.N.Y. June 15, 2019)</u>:**  Also silent on the required account balance, stating that "[a]n overdraft occurs when you do not have sufficient funds in your account to cover a transaction, but we pay it anyway.  SEFCU is not obligated to pay these transactions that exceed the funds in your account.  Transactions include: everyday debit card purchases, ATM withdrawals, and check and electronic funds transfers. Outlined below is SEFCU's overdraft program."

> **<u>*Kelly v. Community Bank, N.A.*, No. 19-CV-919 (MAD/CFH), ECF 42, at ¶¶ 34-35 (N.D.N.Y. Feb. 28, 2020)</u>:**  Likewise no mention of the required balance:  "Under our standard Automated and Non-Automated Overdraft Protection Programs, the Bank may, at its discretion, authorize and pay certain overdraft items when you do not

In the absence of language defining the balance that must be maintained, courts across the country have denied motions to dismiss where other banks' account agreements did not define the terms "available," "sufficient funds," or "enough money" as used in provisions relating to overdraft fees.  That is simply not the case here; Ms. Richard was informed exactly what balance she would need to maintain.  And whether the Account Agreement defined the terms "available" or "enough" is not the relevant question.  The question is whether Ms. Richard could reasonably have understood the Account Agreement to mean Glens Falls was required to *ignore* pending transactions for purposes of imposing overdraft fees.  Instead of addressing this argument head-on, Ms. Richard responds that no bank imposes overdraft fees at "initiation" (*i.e.* authorization).[3] But the language in the Account Agreement requiring Ms. Richard to maintain a balance that will cover all "initiated" transactions does not dictate when such a fee will be assessed.[4]  The reference

have sufficient available funds in your account … An overdraft occurs when you do not have enough money in your account to cover a transaction, but we cover the transaction on your behalf … While we will have the discretion to cover overdrafts on accounts, any such payment is a discretionary courtesy, and not a right of the customer or an obligation of Bank."

***Roy v. ESL Federal Credit Union*, No. 19-CV-6122, ECF 57 at p. 4 (W.D.N.Y. Sept. 30, 2020):** Stating only that "ESL will not pay a check when funds are not available to cover it, and an overdraft fee will be assessed (refer to a Fee Schedule for the exact fee charged).  We are only required to make one determination of the account balance.  If that determination reveals insufficient available funds to pay the check or other item and you have requested CheckOK, unless prohibited by law and in our sole discretion, we may honor the check or other item and transfer the amount of the overdraft from [a savings account]; or if we have previously approved a Cash Reserve Account that is attached to your share draft account, we will honor checks drawn on insufficient funds and add the amount of the overdraft to your Cash Reserve Account up to your approved credit limit[.]"

***Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 483 (E.D.N.Y. 2020)**:  Providing that "[y]ou understand that we may, at our discretion, honor withdrawal requests that overdraw your account. … If an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (NSF)."

[3] In fact, Glens Falls does not uniformly impose overdraft or NSF fees on all such "initiated" transactions.  Rather, Glens Falls' overdraft program is entirely discretionary; whether such fees are ultimately imposed is determined by an individualized analysis of several factors, including a particular customer's account status and history.

[4] The Account Agreement instead provides that "the Bank may determine whether your Account contains sufficient funds to pay a check, other debit or similar transaction at any time between the time the check or other debit or similar transaction is received by the Bank and the Bank's return deadline, and only one determination of the Account balance is required."  Account Agreement, at p. 2.

informs a reasonable customer what balance must be maintained.  A consumer who understands that her account balance must cover all "initiated" transactions cannot reasonably believe that only the account's "ledger" balance would be used in the context of overdraft and NSF fees.  And, contrary to Ms. Richard's suggestion, this case is not about other financial institutions' agreements.

Like the reference to "initiated" transactions, the Funds Availability Disclosure also informs a reasonable consumer's interpretation of what balance must be maintained to avoid overdraft fees.  *See Chambers v. NASA Fed. Credit Union,* 222 F. Supp. 3d 1, 11 (D.D.C. 2016). In *Chambers*, the court dismissed plaintiff's breach of contract claim, in part, because the Fund Availability Disclosure—like the one at issue here—made clear that only certain funds (i.e., "available funds") would be available for the customer's use.  *See id.* ("When the account agreement refers to 'available' funds, it must be referring to a subset of funds unencumbered by such restrictions—exactly the type of restrictions that can create a divergence between the actual and available balances in the first place.").  *See also Domann v. Summit Credit Union*, No. 18-CV-167-WMC (W.D. Wis. Sept. 13, 2018), at p. 8 ("[Other] courts found that, when the funds availability disclosure was read in the context of the agreements as a whole, the agreements could only be reasonably interpreted as providing for use of the available balance method, not the ledger balance method, for assessing overdrafts.  Reading [plaintiff's] contract in a similar fashion, I reach the same conclusion here."); *Page,* 2020 WL 5076690, at *4.  Similarly, the Funds Availability Disclosure here makes clear that only "available funds" can be used for payment, and unambiguously indicates that a subset of the "ledger balance" will be encumbered by certain restrictions.  Account Agreement, at p. 5 ("Once the funds are available, we will use them to pay checks that you have written or you may withdraw them in cash … If you will need the funds from a check deposit right away, you should ask us when the funds will be available.").

4

Ms. Richard cites *Roy v. ESL Federal Credit Union* to argue that the Funds Availability Policy does not inform the consumer of which balance will be used because it fails to disclose that certain funds set aside for pending *debit* transactions will be unavailable. *See* No. 19-CV-6122, ECF 57 at p. 4 (W.D.N.Y. Sept. 30, 2020); ECF 16, at p. 11.[5]  The *Chambers* court, however, dismissed the same argument, reasoning that it brought "Chambers no closer to identifying a promise by the Credit Union to impose overdraft fees only on debit transactions that overdrew her actual balance." *Chambers,* 222 F. Supp. 3d at 11.  Here, Ms. Richard likewise cannot point to any such promise by Glens Falls.

Ms. Richard also cites *Roberts v. Capital One, N.A.,* 719 Fed. Appx. 33, 36 (2d Cir. 2017). *See* ECF 16, at p. 11.  But there, the court grappled with entirely different issues and entirely different language than presented here.  In *Roberts*, the parties disagreed as to whether an overdraft occurred when Capital One *elected* certain costs or when Capital One *actually paid* the merchant for the transaction.  *See* 719 Fed. Appx. at 34-35.  The plaintiff there did not allege the bank improperly used the account's "available" balance instead of its "ledger" balance.  And the Second Circuit ultimately found the language in the account agreement was ambiguous simply because the parenthetical definition of "Overdraft" was unclear.  *See id.* at 36 (definition was not "definite" or "precise" "because it simply tacks a parenthetical purporting to define the term on to the end of a grammatically complex sentence) (internal citations omitted).  Here, the Account Agreement at issue explicitly requires customers to maintain a balance to cover "initiated" transactions.

Finally, Ms. Richard's argument that there are really three potential account balances that a bank must purportedly address in its account documentation only highlights what this case is *not*

---

[5] Ms. Richard also argues that the Account Agreement is ambiguous because it does not reference the word "available." ECF 16, at p. 13, n.2.  That is factually incorrect.  The Account Agreement contains at least thirty-seven (37) references to the word "available"—over 20 of which are found in the Funds Availability Disclosure.  *See generally,* Account Agreement.

about.  It is Ms. Richard's burden to plead plausible claims based on the facts relating to *her* situation, *her* Account Agreement, and to *her* account.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Ms. Richard does not identify any language in the Account Agreement to support any balance-calculation method other than the "available" balance.  Taken as a whole, that is the only reasonable interpretation.  Plaintiff's legal theories untethered to any contractual language (or other factual basis) cannot displace actual pleaded facts, and cannot save the Complaint.

       2.      <u>The Account Agreement Cannot Reasonably Be Understood to Limit NSF Fees to One Regardless of How Many Times a Debit Is Presented and Returned.</u>

Ms. Richard argues that the word "item" in the Account Agreement must mean a single electronic transaction—regardless of the amount of times it is presented and retuned.  Her argument is based on language in Glens Falls' Fee Schedule stating it charges overdraft and NSF fees "per item."[6]  Glens Falls recognizes different courts have come to different conclusions based on similar account-agreement language concerning overdraft and NSF fees.  *Compare, e.g., Lambert v. Navy Fed. Credit Union,* No. 1:19-CV-103-LO-MSN, 2019 WL 3843064, at *4 (E.D. Va. Aug. 14, 2019) (finding the contract unambiguously permitted Navy Federal to assess an NSF fee "without regards to whether  the returned debit item was a re-presentation of a previously rejected request"), *with Perks v. TD Bank, N.A.,* 444 F. Supp. 3d 635, 640 (S.D.N.Y. 2020) (finding the definition of "item" ambiguous "as to whether a resubmission of an ACH transaction is a separate item or is part of the same initial ACH transaction.").  Because the Account Agreement

---

[6] In support of her argument that "item" means a single transaction, Ms. Richard also relies on language in the Account Agreement stating Glens Falls may honor the check or other item and create "an overdraft" (singular).  *See* ECF 16, at p. 20.  However, if Glens Falls chooses to create an overdraft—by authorizing and paying a transaction despite insufficient funds in the account—that item would not be returned or re-presented for payment, and therefore the customer would not receive multiple NSF (or overdraft) fees.  At most (and depending on whether Glens Falls' imposes such fees pursuant to its discretionary program), the customer would receive *one* overdraft fee for Glens Falls' advancing funds and creating "an overdraft" (singular).

language and issues here are more similar to those in *Lambert* and *Page*, this Court should follow the sound reasoning in those decisions. *See Lambert,* 2019 WL 3843064; *Page,* 2020 WL 5076690.

The language at issue in the Account Agreement is much closer to the language at issue in *Lambert* than the cases relied upon by Ms. Richard.  In *Lambert,* the Court analyzed Navy Federal Credit Union's account agreement language stating it can charge a fee for each returned debit:  "A fee may be assessed … for each returned debit item."  *Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064, at *4 (also stating "A fee will be assessed … **for each refused check**") (emphasis added).  Here, Glens Falls' Account Agreement also authorizes it to charge a fee for "**each check or other debit**" presented against insufficient funds and returned.  *See* Account Agreement, at p. 2 (authorizing Glens Falls to assess a charge "for each check or other debits … presented against insufficient funds") (emphasis added); *id.* at p. 8 ("Glens Falls has the right to return unpaid any checks on your Account **that are presented for payment and to assess a service charge for making such returns**.") (emphasis added).

Based on the language above, the *Lambert* Court found the account agreement unambiguously authorized the credit union to assess a fee for each returned item, reasoning that a second debit item is a new item "just as a second check would be a new check even if it was by the same merchant, in the same amount, for the same purpose."  2019 WL 3843064, at *3.  *See also id.* at *4 (also explaining that the credit union "did not keep Plaintiff's [merchant's] unsuccessful first ACH requested," but rather, "returned the request" and "waited for [the merchant] to submit another request for payment.").  The *Lambert* Court ultimately dismissed plaintiff's breach of contract claim because the agreement "unambiguously provide[d] that each time Navy Federal Credit Union returns a request for payment for insufficient funds, a

nonsufficient fund fee may be assessed **without regards to whether the returned debit item was a re-presentment of a previously rejected request**." *Id.* (emphasis added).

The *Page* Court also rejected the argument that "item" means a single transaction, noting that Page—like Ms. Richard here—failed to show that the provisions at issue "promise[d] members that Alliant will charge just one overdraft fee per transaction." *Page*, 2020 WL 5076690, at *4. And the Court also appropriately declined to consider improper extrinsic evidence to find the agreement is ambiguous by comparing Glens Falls' practices to practices and disclosures of other financial institutions. *See id.* ("Page also asserts that the overdraft practices of other financial institutions create 'inherent ambiguity' in the Membership Agreement, yet the Court cannot consider extrinsic evidence if the agreement's language is unambiguous, as is the case here."). The Court concluded that, despite Page's "stilted reading" of the agreement, "in the context of the entire Membership Agreement, Alliant charges its members an overdraft fee every time a third-party payee presents an item for payment against insufficient available funds." *Id.*

Lastly, Ms. Richard again urges this Court to read certain portions of the Account Agreement in isolation. *But see Spinac v. Carlton Grp., LTD.,* 99 A.D.3d 603, 604, 952 N.Y.S.2d 870, 871 (N.Y. 2012) ("Agreements should be construed as a whole to avoid excessive emphasis on particular words or phrases"). Ms. Richard conveniently ignores the clear language stating that Glens Fees can impose such charges "for **each check or other debits** … **presented against insufficient funds**." Account Agreement, at p. 2. That language cannot be clearer that a consumer can receive a separate fee for *each* **check or debit presented**. Ms. Richard points to no language contradicting this statement. In addition, the Fee Schedule's language stating that Glens Falls will charge a fee "per item" must be read in harmony with the language in the debit card overdraft section authorizing it to impose such fees for all unpaid checks that are "presented for payment":

"Glens Falls has the right to return unpaid any checks on your Account **that are presented for payment and to assess a service charge for making such returns**."  Account Agreement, at p. 8 (emphasis added).  Moreover, the use of the word "returns" (plural) indicates that an NSF fee can be assessed for every unpaid check that is presented against insufficient funds and returned.

**C.     Ms. Richard's Claim for Breach of an Implied Covenant Fails Because Glens Falls Imposed Its Fees in Accordance with the Account Agreement.**

If this Court finds that Glens Falls imposed the alleged fees in accordance with the express terms of the Account Agreement, Ms. Richard's claim for breach of an implied covenant (Count II) necessarily fails.  But even if this Court allows Count I to proceed, Count II still must fail because such a claim "cannot stand alone, but is subsumed within the breach of the underlying contract." *Loudon Plastics, Inc. v. Brenner Tool & Die, Inc.*, 74 F. Supp. 2d 182, 188 (N.D.N.Y. 1999).  Here, Paragraph 81 incorporates Ms. Richard's allegation that she entered into an Account Agreement with Glens Falls (Compl. ¶¶ 27, 75) into her claim for breach of an implied covenant.

**D.     Ms. Richard's Quasi-Contract Claims Fail Because She Admits the Account Agreement Governs the Banking Relationship Between the Parties.**

Quasi-contract claims for unjust enrichment and money had and received cannot proceed where "a contract governs the relationship between a plaintiff and a defendant." *Patchen v. Gov't Employers Ins. Co.,* 759 F. Supp. 2d 241, 250 (E.D.N.Y. 2011).  *See also Perks v. TD Bank, N.A.,* 444 F. Supp. 3d at 640 ("It is well settled that a claim for unjust enrichment will not lie if the parties have a contract.  Although an exception to that rule exists when there is a question whether the contract is valid, that exception does not apply here.").  Here, a contract governs the relationship, and is expressly pleaded as a basis for this claim.  *See* Compl. ¶¶ 27, 75, 89, 92.

**E.     Ms. Richard Cannot State a Claim under NYGBL § 349.**

Ms. Richard argues that her Section 349 claim was adequately plead because it alleges that Glens Falls engaged in deceptive business acts and practices "by making false promises regarding

its fee practices."  ECF 16, at p. 26.  If this Court finds that Glens Falls complied with the unambiguous language of the Account Agreement, Ms. Richard's allegation that Glens Falls made "false promises" cannot be true, and thus the claim must fail as a matter of law.  Moreover, even if the Court permits Count I to proceed, Ms. Richard's Section 349 claim fails because it is duplicative of her breach of contract claim.  *See Perks,* 444 F. Supp. 3d at 641.

**F.    The Court Should Strike Inapplicable Portions of the Complaint.**

Finally, Ms. Richard argues Paragraphs 20 and 21 should not be stricken because they "demonstrate the importance of the consumer issue at stake here to the public."  ECF 16, at p. 27.  But  Ms. Richard does not allege a claim for violation of Regulation E so whatever "consumer issue" she claims is at stake has no relevance here.  And Ms. Richard's contention that discovery is necessary to determine whether Glens Falls engaged in such practices demonstrates exactly why Glens Falls will be prejudiced if the paragraphs are not stricken.  Ms. Richard cannot articulate any reason why such allegations are even remotely relevant, yet still insists on conducting discovery on those issues.  *See, e.g., Coach, Inc. v. Kmart Corps.,* 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010) (striking an inapplicable affirmative defense because it would cause plaintiffs to "needlessly incur increased discovery costs in having to explore the factual grounds for [the] defense.").  In any event, the EFTA only governs overdraft fees on ATM and one-time debit card transactions, and Glens Falls does "not charge fees for overdrafts caused by ATM withdrawals or one-time Point of Sale (POS)/Debit Card transactions."  Account Agreement, at p. 2, 8.

## CONCLUSION

For the foregoing reasons, Glens Falls respectfully requests that this Court: (1) dismiss Plaintiff's Complaint; and/or (2) strike immaterial portions of the Complaint.

Dated:  October 26, 2020

Respectfully Submitted,

**THOMPSON COBURN LLP**

By: /s/ Lukasz Sosnicki
    Lukasz Sosnicki
    2029 Century Park East, 19th Floor
    Los Angeles, CA 90067
    (310) 282-2538
    (310) 282-2501 (fax)
    lsosnicki@thompsoncoburn.com

    *Attorneys for Defendant Glens Falls*
    *National Bank*

**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that October 26, 2020, a true and correct copy of the foregoing was filed with the Clerk of Court, to be served via the Court's ECF system on all counsel of record.


          /s/ *Dana M. Hass*
          Dana M. Hass