# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAPHNE RICHARD, individually, and on behalf of others similarly situated, | : : : | |
| Plaintiff, | : : | 1:20-cv-734 (BKS/DJS) |
| v. | : : : | |
| GLENS FALLS NATIONAL BANK and DOES 1 through 100, | : : : | March 17, 2021 |
| Defendants. | : : | |

---

## AMENDED CLASS ACTION COMPLAINT

---

Plaintiff Daphne Richard ("Plaintiff"), by her attorneys, hereby brings this class and representative action against Glens Falls National Bank and DOES 1 through 100 (collectively "Glens Falls" or "Defendant").

## NATURE OF THE ACTION

1.     All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or her counsel.  Allegations pertaining to Plaintiff or her counsel are based upon, *inter alia*, Plaintiff's or her counsel's personal knowledge, as well as Plaintiff's or her counsel's own investigation.  Furthermore, each allegation alleged herein either has evidentiary support or is likely to have evidentiary support, after a reasonable opportunity for additional investigation or discovery.

2.     This is a class and representative action brought by Plaintiff to assert claims in her own right, and in her capacity as the class representative of all other persons similarly situated, and in her capacity as a private attorney general on behalf of the members of the general public.

Glens Falls wrongfully charged Plaintiff and the Class Members overdraft fees and Non-Sufficient Funds fees.

3.      This class action seeks monetary damages, restitution, and injunctive relief due to, *inter alia*, Glens Falls' policy and practice of assessing an overdraft fee or NSF fee on transactions when there was enough money in the checking account to cover (pay for) the transactions presented for payment. This class action also seeks monetary damages, restitution, and injunctive relief related to Glens Falls' policy and practice of charging multiple Non-Sufficient Funds Fees ("NSF fees") on the *same* electronic item. The charging of such overdraft fees and NSF fees breaches Glens Falls' contracts with its customers, who include Plaintiff and the members of the Class.

## PARTIES

4.      Plaintiff Daphne Richard is a resident of Glens Falls, New York and was a member of Glens Falls National Bank at all times relevant to the class action allegations.

5.      Based on information and belief, Defendant Glens Falls National Bank has assets of approximately $2.5 billion, and currently operates over 30 branch locations in New York, with its headquarters located in Glens Falls, New York.

6.      Without limitation, defendants DOES 1 through 100, include agents, partners, joint ventures, subsidiaries and/or affiliates of Glens Falls and, upon information and belief, also own and/or operate Glens Falls branch locations. Each of defendants DOES 1 through 100 is a "financial institution" within the meaning of Regulation E (12 C.F.R. § 1005.2(i)). As used herein, where appropriate, the term "Glens Falls" is also inclusive of Defendants DOES 1 through 100.

7.      Plaintiff is unaware of the true names of defendants DOES 1 through 100. Defendants DOES 1 through 100 are thus sued by fictitious names, and the pleadings will be amended as necessary to obtain relief against defendants DOES 1 through 100 when the true names are ascertained, or as permitted by law or by the Court.

8.      There exists, and at all times herein mentioned existed, a unity of interest and

ownership between the named defendants (including DOES) such that any corporate individuality and separateness between the named defendants has ceased, and that the named defendants are *alter egos* in that the named defendants effectively operate as a single enterprise, or are mere instrumentalities of one another.

9.      At all material times herein, each defendant was the agent, servant, co-conspirator and/or employer of each of the remaining defendants, acted within the purpose, scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants, and ratified and approved the acts of the other defendants.  However, each of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

10.      Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendant's ordinary business and affairs.

11.      As to the conduct alleged herein, each act was authorized, ratified or directed by Defendant's officers, directors, or managing agents.

## VENUE AND JURISDICTION

12.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) & (6), this Court has jurisdiction because (a) the proposed Class is comprised of at least 100 members; (b) at least one member of the proposed Class resides outside of the State of New York; and (3) the aggregate claims of the members of the proposed Class exceed $5 million, exclusive of interest and costs.

13.      Venue is proper in this District, among other reasons, pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this District.

## FACTUAL ALLEGATIONS

14.     Glens Falls offers its consumer banking customers a checking account.  One of the features of a Glens Falls checking account is a debit card, which can be used for a variety of transactions including the purchasing of goods and services.  In addition to receiving a debit card, other features of a Glens Falls checking account include the ability to write checks; withdraw money from ATMs; schedule Automated Clearing House (ACH) transactions (certain recurring payments); and other types of transactions that debit from a checking account.

15.     In connection with its processing of debit transactions (debit card, ATM, check, ACH, and other similar transactions), Glens Falls assesses overdraft fees and NSF fees to customer accounts when it claims to have determined that a customer's account has been overdrawn.

16.     Overdraft fees and NSF fees constitute the primary fee generators for banks and credit unions. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $34.5 billion from overdraft fees.

17.     The high cost of an overdraft fee is usually unfairly punitive.  In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrew their account by mistake.  (May 2012 Pew Charitable Trust report entitled "Overdraft America:  Confusion and Concerns about Bank Practices," at p. 4).  More than 60% of the transactions that resulted in a large overdraft fee were for less than $50.  (June 2014 Pew Charitable Trust report entitled "Overdrawn," at p. 8).  More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (*id*. at p. 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee (*id*. at p. 10).

18.     Unfortunately, the customers who are assessed these fees are the most vulnerable customers.  Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees.  (*Id*. at p. 1).  A 25-year-old is 133% more likely to pay an overdraft penalty fee than a 65-year-old.  (*Id*. at p. 3).  More than 50% of the customers

assessed overdraft fees earned under $40,000 per year.  (*Id*. at p. 4).  Non-whites are 83% more
likely to pay an overdraft fee than whites.  (*Id*. at p. 3).

19.     As a result of banks taking advantage of millions of customers through the unfair
practice of charging overdraft and NSF fees through methodologies that maximize the possible
number of expensive overdraft fees to be charged, there has been a substantial amount of
litigation over the past few years. The outcome of these cases has predominantly fallen in favor
of plaintiffs with the banks and credit unions repaying their customers over one billion dollars
for the unlawfully assessed overdraft fees by way of jury verdicts and settlements.[1]

20.     The federal government has also stepped in to provide additional protections to
customers with respect to abusive overdraft policies.  In 2010, the Federal Reserve Board
enacted regulations giving financial institutions the authority to charge overdraft fees on ATM
and one-time debit card transactions only if the institution first obtained the affirmative consent
of the customer to do so. (12 C.F.R. § 1005.17 (Regulation E's "Opt-In Rule")).

21.     To qualify as affirmative consent, the Opt-In Contract must include, but is not
limited to the following:

- The customer must be provided the overdraft policy, including the dollar
amount of any fees that will be charged for an overdraft, and the
maximum number of fees that can be assessed on any given day (if there is
no maximum, that fact must be stated);

- The financial institution must state whether alternatives, such as linking
the checking account to a secondary account or line of credit, are
available.

- The opt-in consent must be obtained separately from other consents and
acknowledgements;

---

[1] http://files.consumerfinance.gov/f/documents/CFPB_Arbitration_Agreements_Notice_of_Prop
osed_ Rulemaking.pdf, at p. 74-75.

- The consent cannot serve any purpose other than opting into the overdraft program;

- The consent cannot be a pre-selected checked box;

- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

If the financial institution does not obtain proper, affirmative consent from the customer that meets all of the requirements of Regulation E's Opt-in Rule, including fulfilling each of the above requirements, then it is not permitted to charge overdraft fees on ATM and one-time debit card transactions.

22.      On information and belief, Glens Falls has had an overdraft and NSF fee program in place for assessing  fees which, *inter alia*, is: (1) contrary to the express and implied terms of its contract with members; (2) contrary to Glens Falls' representations about its overdraft program to its members; and (3) contrary to its members' expectations regarding the assessment of overdraft fees.

23.      There are three balances in an account: the "balance;" the "collected available balance;" and, the "artificial available balance."  The "balance" (sometimes called the "actual balance" or "ledger balance") is the money in the account, without deductions for holds on pending transactions or on deposits.  It is the official balance of the account.  It is the balance provided to the customer in monthly statements, which is the official record of activity in the account.  It is the balance used to determine interest on deposits and any minimum balance requirements.  Further, based on information and belief, it is the balance which is used by Defendant Glens Falls to report its deposits to regulators, shareholders and the public.  It is the balance provided to regulators in call reports and reserve reports.  It is the balance used in financial reports to shareholders and the balance used for internal financial reporting.  It is the balance used by credit reporting agencies in providing credit ratings of Glens Falls.

24.      The "collected available balance" is the "balance" less holds placed on certain deposits pursuant to the financial institution's "Funds Availability Policy" ("FAP").  Regulation

6

CC (12 CFR part 229) establishes maximum permissible hold periods for checks and other deposits and all financial institutions are required by it to have an FAP.

25.     The "artificial available balance" is a completely different calculation than the "collected available balance." Although the "artificial available balance" has the words "available balance" in it like the "collected available balance" does,  the "artificial available balance" is an accounting gimmick which  takes the "collected available balance" and then further deducts from it pending debit card transactions which have not yet posted (and which might or might not ever post), meaning the money is still in the account of the credit union member.  Thus, when a financial institution states it will only charge an overdraft or NSF when there is a "negative balance" in the account, it cannot mean a "negative balance" based on an "artificial available balance" calculation, as this would be self-contradictory.

26.     On information and belief, Glens Falls collects overdraft and NSF fees based on the "artificial available balance".  There is no requirement to use the "artificial available balance", and during the class period Glens Falls had no authority or disclosure or statement in any of its contracts with its members that it would use the "artificial available balance" calculation for purposes of assessing overdraft or NSF fees.

27.     Not only is the practice of using the "artificial available balance" calculation to determine whether a transaction results in an overdraft or NSF fee contrary to Glens Falls' contracts with its members during the class period, but such practices have resulted in Glens Falls improperly charging unlawful overdraft and NSF fees.

28.     Glens Falls entered into a written contract with Plaintiff and the other Class Members titled "Deposit Account Agreement".  Nowhere does the Deposit Account Agreement ("Account Agreement")  state that for determining whether to impose an NSF Fee or overdraft fee the bank will make deductions from a customer's balance for pending debit card transactions or holds on deposits.  Rather, the contract, either expressly, or at least strongly implicitly, contracts that an overdraft fee or NSF fee is assessed when the "balance" is not positive, and does not state that the "collected available balance" or "artificial available balance" would be

used instead, and certainly does not indicate that if money in a balance were to  be set aside for a debit card transaction that it could later still lead to an overdraft or NSF fee.  Imposing an overdraft or NSF fee when the "balance" is negative is consistent with the Account Agreement which states at page 3, "If you write a check or initiate other debits or similar transactions for **more money than you have in your Account**…" (emphasis added.)

29.     It is undisputable that the Account Agreement never states anywhere that holds will be placed on funds in the account for pending debit card transactions, and that those funds will be subtracted from the member's "balance" to instead create an "artificial available balance" for the purpose of determining  overdraft or NSF fees.  It is further undisputable that nowhere does the Account Agreement define "sufficient funds" or "sufficient available funds" in any manner, let alone define it as an "artificial available balance" which deducts pending transactions.   Instead, the Account Agreement states that the bank may "create an overdraft…if you write a check or initiate other debits or similar transactions **for more money than you have in your Account**." (emphasis added.)  "Money in your account" does not mean "money in your account less holds for pending debit card transactions we place on money in your account."

30.     At best for Glens Falls, although Plaintiff disputes it, there might be an arguable ambiguity as to whether Glens Falls was allowed to use "collected available balance" rather than "balance" for purposes of assessing overdraft and NSF fees.  But under no circumstances is there even an implication that it could use the "artificial available balance," meaning an unannounced deduction for pending debit card transactions, for this purpose.

31.     On information and belief, Glens Falls charged overdraft and NSF fees when the balance contains as much or more money than has been requested, but some subset of the balance does not.  Glens Falls' practice of charging overdraft and NSF fees, even when there is enough money in the account to cover a transaction presented for payment, is inconsistent with how Glens Falls' Account Agreement expressly describes the circumstances under which overdraft and NSF fees are assessed.  Further, on information and belief, Glens Falls did not comply with its own funds availability policy on deposits.  Discovery of Glens Falls' databases

will be required to confirm this.

32.    Glens Falls also has an improper practice of charging multiple NSF fees for the same electronic item.  Glens Falls charges a $32 fee when an electronic item is first processed for payment and Glens Falls determines that there supposedly is not enough money in the account to cover the item (a practice that on information and belief uses the wrong "balance" to make the determination as described above).  Glens Falls then charges an *additional* NSF fee if the same item is presented for processing again, even though the account holder took no action to resubmit the transaction for payment.  This violates the Account Agreement, *inter alia*, at page 3 which states "the Bank may honor **the check or other item** and create **an** overdraft." (emphasis added.)  In other words, the Account Agreement drafted by Defendant itself states in the singular, "**an** overdraft" will be charged, not the plural "**multiple non-sufficient funds fees or overdrafts,"** will be charged for an overdrawn "item," and does not say for "each presentment of an item."  Further, "item" means a single electronic transaction.  A re-presentment" or a "retry" of the same "item" does not change it into a new or different "item."  It is still the same "item" being presented by the same merchant in the same dollar amount, not a new "item."  An electronic item reprocessed after an initial return for insufficient funds, especially through no action by the customer, cannot and does not fairly become a new, unique additional "item" for fee assessment purposes.

33.    Nowhere does Glens Falls' Account Agreement state that multiple presentments of the same "item" allow it to charge multiple fees for that same "item."  Nowhere does the Account Agreement state that the NSF fee would be "for each presentment of the item" or "per presentment of the item."  It does not even have an adjective such as "debit" in front of the word "item" to arguably create an ambiguity on this issue.

34.    Glens Falls' Fee Schedule further confirms that the Non-Sufficient Funds or

**SCHEDULE OF FEES**

**CHECKING ACCOUNTS**

Overdrafts* and Checks Returned for Insufficient Funds    $32.00 per item
(returned and charged/paid and charged)

overdraft fee charge is to be "per item," and not "per each presentment of the item" as it clearly

states as follows:

Therefore, when reading the Fee Schedule in conjunction with the Account Agreement, it is not

even reasonably arguable by Defendant that there might have been an ambiguity which allowed

Defendant to argue it could charge "$32 per each presentment of an item" rather than "$32 per

item."

35.     Of note, many financial institutions that do engage in this same or similar abusive

practice of charging repeat NSF fees for the same "item" at least at a minimum make this clear in

their Account Agreements or Fee Schedules, or both, unlike Defendant.  They typically use the

terminology such as "per presentment" or "per each presentment" to make this clear, and often

also add far more in explaining this practice to avoid the term being ambiguous.

36.     For example, Air Academy Federal Credit Union contracts its NSF fee as "$32.00

**per presentment**." (emphasis added)  https://www.aafcu.com/fees.html

37.     Central Pacific Bank contracts unambiguously:

Items and transactions (such as, for example, checks and electronic
transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds
in your account, **may be resubmitted one or more times for payment, and a $32 fee
will be imposed on you each time an item and transaction resubmitted for payment
is returned due to insufficient/nonsufficient funds**.  (emphasis added)

(https://www.cpb.bank/media/1618/fee-001-rev-10-24-2019-misc-fee-schedule.pdf)

38.     Community Bank, N.A. unambiguously contracts:

You may be charged more than one Overdraft or NSF Fee if a merchant submits a single
transaction multiple times after it has been rejected or returned.

(https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure-
FINAL-1.14.2020.pdf)

39.     Delta Community Credit Union contracts its NSF fee as "$30 **per presentment**."

(emphasis added)  https://www.deltacommunitycu.com/home/fees.aspx.  Further, in its Account

Agreement, Delta unambiguously states as follows:

> The Credit Union reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account.  **Note that you may be charged an NSF fee each time a check or ACH is presented to us, even if it was previously submitted and rejected**. (emphasis added)  (https://www.deltacommunitycu.com/home/forms/member-savings-services-disclosures-and-agreements.aspx

40.     First Financial Bank contracts unambiguously:

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). **Each presentment is considered an item and will be charged accordingly**." (emphasis added)

(https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_Charges.pdf)

41.     First Hawaiian Bank unambiguously contracts:

> You agree that multiple attempts may be made to submit a returned item for payment and that multiple fees may be charged to you as a result of a returned item and resubmission.

(https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf)

42.     First Northern Credit Union lists their NSF fee as "$22.00 **per each presentment and any subsequent representment(s)**."  (emphasis added)

https://www.fncu.org/feeschedule/?scpage=1&scupdated=1&scorder=-click_count . Further, in its Account Agreement, First Northern unambiguously states as follows:

> You further agree that **we may charge a NSF fee each time an item is presented for payment even if the same item is presented for payment multiple times**.  For example, if you wrote a check to a merchant who submitted the payment to us and we returned the item (resulting in a NSF fee), the merchant may re-present the check for payment again.  If the second and any subsequent presentments are returned unpaid, **we may charge a NSF fee for each time we return the item.  You understand this means you could be charged multiple NSF fees for one check** that you wrote as that check could be presented and returned more than once.  **Similarly**, if you authorize a merchant (or other individual or entity) to electronically debit your account, such as an ACH debit, **you understand there could be multiple submissions of the electronic debit request which could result in multiple NSF fees**.  (emphasis added) (https://www.fncu.org/SecureAsset.aspx?Path=/7/Member_Agreement_November_1_20

19.pdf)

43.     Glendale Federal Credit Union lists their NSF fee as "$30 **per presentment**."

(emphasis added)  https://glendalefcu.org/pdf/fees.pdf

44.     Klein Bank contracts unambiguously:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee** as provided in this section **regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.** (emphasis added)

(kleinbankonline.com/bridge/disclosures/ib/disclose.html)

45.     Liberty Financial contracts its NSF fee as "$27.00 **per presentment**."

https://liberty.financial/about/fee-schedule/  (emphasis added)

46.     Los Angeles Federal Credit Union lists its NSF fee as "$29 **per presentment**."

https://www.lafcu.org/pdf/currentfees_bus.pdf (emphasis added)

47.     Members First Credit Union contracts unambiguously:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once…we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment** [.] (emphasis added)

(http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf)

48.     Meriwest Credit Union lists its fee as "$35.00/item **per presentment**". (emphasis added)  https://www.meriwest.com/sites/www.meriwest.com/files/media/consumer_feesched.pdf

49.     Partners 1st Federal Credit Union contracts unambiguously:

Consequently, because **we may charge a fee for an NSF item each time it is presented,**

**we may charge you more than one fee for any given item**. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. (emphasis added)

(https://www.partners1stcu.org/uploads/page/Consumer_Account_Agreement.pdf)

50.     RBC Bank unambiguously contracts:

"We may also charge against the Account an NSF fee for each item returned or rejected, **including for multiple returns or rejections of the same item**." (emphasis added)

https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf)

51.     Regions Bank contracts unambiguously:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. **If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.** (emphasis added)

(https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf)

52.     Tyndall Federal Credit Union lists its NSF fee as "$28.00 **per presentment**

(maximum 5 per day)." https://tyndall.org/member_center/document_center/fee_schedule

53.     USE Credit Union states "**Fees are charged per presentment, meaning the**

**same item is subject to multiple fees if presented for payment multiple times**." (emphasis

added)  (https://www.usecu.org/home/fiFiles/static/documents/Schedule_of_Fees.pdf)

54.     Unlike these other financial institutions, Glens Falls does no such thing.  If Glens

Falls wanted to engage in this abusive practice, it at least was required to state and contract so, as

these other financial institutions all do.  All of these quotations show that banks and credit unions

know how to make a contract if they want to charge more than one fee for the same "item," and

they differentiate between an "item" and the "repeat presentment of the item" when calculating

NSF fees.  Glens Falls nowhere states that it will assess an NSF fee per each presentment of the item, but instead says it will charge "an NSF fee" (singular) and do so "per item" (not "per each presentment of the item"). However, in practice Glens Falls charges the fee "per each presentment of the item" rather than "per item" as it stated it would.  A resubmission of the same item or transaction does not create a new "item," and cannot result in an additional NSF fee, pursuant to Glens Falls' own contracts.

55.    Glens Falls' practice of charging multiple NSF fees for a single electronic transaction is particularly egregious because, as described, Glens Falls assesses such fees using an improper version of  the balance  in a member's account (the "artificial available balance" rather than "balance" or even "collected available balance") after holding the authorized funds, causing additional confusion and ambiguity.  On information and belief, Glens Falls therefore often charges an overdraft or NSF fee improperly, and that improper $32 deduction from a member's balance further decreases the "balance," generating even more NSF or overdraft fees.

56.    Plaintiff and the Class Members have performed all conditions, covenants, and promises required by each of them in accordance with the terms and conditions of the contracts. Plaintiff did not and could not have, exercising reasonable diligence, discovered both that she had been injured and the actual cause of that injury until she met with her attorneys in or about March 2020.  This not only reasonably delayed discovery, but Defendant's affirmative representations and actions also equitably toll any statute of limitations, and, also additionally equitably estop Defendant.

57.    Therefore, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as set forth below.  Plaintiff was harmed by Defendant's policy and practice of charging multiple fees on the same item.  As stated, Plaintiff entered into contracts with Glens Falls during

the relevant class periods wherein Glens Falls contracted to charge overdraft fees or NSF fees only if there were insufficient funds to pay the item, and only to charge an NSF or overdraft "fee" (singular) "per item" (not "per each presentment of the item"). Glens Falls breached its contracts with Plaintiff by charging multiple NSF or overdraft fees on the same item, and by charging NSF or overdraft fees when there was enough money in the account to cover the transaction. It will be necessary to obtain Defendant's records to determine each instance of such a wrongful overdraft or NSF fee. However, to give one example, on July 24, 2018, Plaintiff was charged a $32 "Insufficient Funds Fee" for a $14.49 item, and another $32 "Insufficient Funds Fee" for a $13.14 item, when there were insufficient funds in the account to cover the items.   To give another example of damages, on December 24, 2018, when Plaintiff had $73.58 in her account, she engaged in a transaction for $51.29, leaving $22.29 in her account, but was nonetheless charged a $32 "Overdraft Fee" for it. As another example, on December 26, 2018, there was one transaction for $11.53, and another transaction for $19.94. These two transactions were not paid by Defendant, but were declined, and a fee of $32 each, or $64, was charged for the two attempted items which were not paid. These same two items of $11.53 and $19.94 were re-presented for payment on January 2, 2019, and were again declined by Defendant, and for declining these same two items a second time, Defendant again charged $32 per item for the re=presentment, or an additional $64 on top of the $64 already charged. In other words, Defendant charged **$128** for declining the same two items which Defendant never paid, and which items amounted to only a total of **$31.47**. As another example, Plaintiff attempted to pay for an item on July 20, 2016, for $33.39, but Defendant declined the item and charged her a $32 "Insufficient Funds Fee" for declining it. This same item was re-presented for payment on July 26, without any intervention by Plaintiff, and this time Defendant paid the item, but charged a

$32 "Overdraft Fee."  This means that Defendant charged Plaintiff a total of **$64** for this same

one item which totaled only **$33.39**.  Plaintiff believes that Defendant's database will reveal

numerous other and different examples of the improper charging of more than one NSF fee for

the same, and of the improper charging of overdraft and NSF fees when there was enough money

in the account to cover the transaction.

58.     Moreover, the assessment and unilateral taking of improper overdraft or NSF fees

further reduces the balance and amount of funds in the account, resulting in and aggressively

causing subsequent, otherwise non-overdraft transactions to be improperly treated as transactions

for which Glens Falls assesses further overdraft or NSF fees.  This practice was deemed to be

deceptive and substantially harmful to customers by the CFPB, which made the following

conclusions in its studies:

> Examiners also observed at one or more institutions the following sequence
> of events after the institutions switched balance-calculation methods: a
> financial institution authorized an electronic transaction, which reduced a
> customer's available balance but did not result in an overdraft at the time of
> authorization; settlement of a subsequent unrelated transaction that further
> lowered the customer's available balance and pushed the account into
> overdraft status; and when the original electronic transaction was later
> presented for settlement, because of the intervening transaction and
> overdraft fee, the electronic transaction also posted as an overdraft and an
> additional overdraft fee was charged. Because such fees caused harm to
> consumers, one or more supervised entities were found to have acted
> unfairly when they charged fees in the manner described above. Consumers
> likely had no reason to anticipate this practice, which was not appropriately
> disclosed. They therefore could not reasonably avoid incurring the overdraft
> fees charged. Consistent with the deception findings summarized above,
> examiners found that the failure to properly disclose the practice of charging
> overdraft fees in these circumstances was deceptive.

(*Infra,* Supervisory Highlights, Winter 2015, a pp. 8-9.)   A complete evaluation of Glens Falls'

records is necessary to determine the full extent of Plaintiff's harm from this practice.

59.     Plaintiff was harmed by these practices when she was assessed overdraft fees and NSF fees when she should not have been. A complete evaluation of Glens Falls' records is necessary to determine the full extent of Plaintiff's harm from this practice as well.

## CLASS ACTION ALLEGATIONS

60.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

61.     Plaintiff bring this case, and each of her respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a)(b)(1), (b)(2) and (b)(3) on behalf of the following class.

62.     The "Class" is composed of two classes:

**The Account Balance Class:**

> **All United States residents who have or have had accounts with Glens Falls who incurred an overdraft fee or NSF fee when the balance in the checking account was sufficient to cover the transaction at issue during the period beginning six years preceding the filing of this Complaint and ending on the date the class is certified.**

**The Repeat NSF Class:**

> **All United States residents who have or have had accounts with Glens Falls who incurred an NSF fee more than once, or an NSF fee followed by an overdraft fee, for the same item during the period beginning six years preceding the filing of this Complaint and ending on the date the class is certified.**

63.     Excluded from the Classes are: (1) any entity in which Defendant has a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its

employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class Members.

64.     This action has been brought and may be properly maintained on behalf of each member of the Class pursuant to Federal Rule of Civil Procedure 23.

65.     **Numerosity** – The members of the Class are so numerous that a joinder of all members would be impracticable.  While the exact number of Class Members is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believe that the Classes are likely to include thousands of members based on the fact that Glens Falls has approximately $2.5 billion in assets and operates approximately 30 branches in New York.

66.     Upon information and belief, Defendants have databases, and/or other documentation, of its customers' transactions and account enrollment.  These databases and/or documents can be analyzed by an expert to ascertain which of Glens Falls' members have been harmed by its practices and thus qualify as Class Members.  Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover.  Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class Members through notice published in newspapers or other publications.

67.     **Commonality** – This action involves common questions of law and fact.  The questions of law and fact common to both Plaintiff and the Class Members include, but are not limited to, the following:

a.      Whether, pursuant to the Account Agreement, Defendant

Case 1:20-cv-00734-BKS-DJS   Document 27   Filed 03/17/21   Page 19 of 29

contracted that it would charge more than one NSF fee, or an NSF fee followed by an overdraft fee, for the same item each time that same item was presented or re-presented;

       b.      Whether, pursuant to the Fee Schedules, Defendant disclosed it would charge more than one NSF for the same item, or an NSF fee followed by an overdraft fee, charging a fee each time the same item was re-presented;

       c.      Whether Defendant breached the Account Agreement by assessing overdraft fees or NSF fees for transactions when customers' checking accounts contained enough money to cover the transactions;

       d.      Whether Defendant's Account Agreement was ambiguous on the issue of whether it would use a customer's "balance" or "collected available balance" or "artificial available balance" when determining whether to assess NSF fees or overdraft fees for transactions;

68.    **Typicality** – Plaintiff's claims are typical of all members of the Class.  The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and all of the Class Members are substantially the same because all of the relevant agreements between Defendant and its customers, including the Account Agreement and Fee Schedules, were identical as to all relevant terms, and also because, *inter alia*, the challenged practices of charging customers for overdraft fees or NSF fees when there were sufficient funds in the accounts to pay for the transactions at issue, and of assessing multiple NSF fees, or an NSF fee followed by an overdraft fee, for the same electronic item, are uniform for Plaintiff and all Class Members.  Accordingly, in pursuing her own self-interest in litigating her claims, Plaintiff will also serve the interests of the other Class Members.

69.     **Adequacy** – Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection.  There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Plaintiff and her counsel intend to prosecute this action vigorously.

70.     **Predominance and Superiority** – The matter is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law or fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class Members.  Further, the class action is superior to all other available methods for the fair and efficient adjudication of this matter.  Because the injuries suffered by the individual Class Members are relatively small, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class Members to individually seek redress for Defendant's wrongful conduct.  Even if any individual person or group(s) of Class Members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court.  In contrast, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  As a result, a class action is superior to other available methods for the fair and efficient adjudication

of this controversy.  Absent a class action, Plaintiff and the Class Members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

71.     Plaintiff does not believe that any other Class Members' interest in individually controlling a separate action is significant, in that Plaintiff has demonstrated above that her claims are typical of the other Class Members and that she will adequately represent the Class. This particular forum is a desirable forum for this litigation because both Defendant resides in this District. Plaintiff does not foresee significant difficulties in managing the class action in that the major issues in dispute are susceptible to class proof.

72.     Plaintiff anticipates the issuance of notice, setting forth the subject and nature of the instant action, to the proposed Class Members.  Upon information and belief, Defendant's own business records and/or electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, Plaintiff anticipates the use of additional media and/or mailings.

73.     This matter is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure in that:

      a.   Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the Class format, prosecution of separate actions by individual members of the Class will create the risk of:

            1.   Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

            2.   Adjudication with respect to individual members of the Class,

which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests. The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

b.   Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

1.   The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

2.   The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

3.   The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

4.   The difficulties likely to be encountered in the management of a class action.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

74.   The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

75.   Plaintiff and each of the Class Members entered into an Account Agreement with

Defendant covering the subject of overdraft and NSF transactions.  This contract was drafted by and is binding upon Defendant.

76.     Nowhere did the Account Agreement state that Glens Falls would assess an additional NSF fee every time the same electronic item was re-presented for processing or submitted as a "retry."  Glens Falls wrongfully treated a "retry" as a new and separate "item" in violation of the terms of the Account Agreement.  This also contradicted its own Fee Schedule which said that an NSF fee would be "per item" not "per each presentment of an item."

77.     Further, in the Account Agreement, Defendant promised that Glens Falls would assess overdraft or NSF fees only when the transaction caused the balance to fall below zero. Nowhere did it state it would place holds on pending transactions where the money was still in the account and use that artificially lowered balance for the purpose of determining whether to assess an overdraft of NSF fee.  Glens Falls wrongfully charged overdraft or NSF fees when the balance was sufficient to cover a transaction.

78.     Plaintiff and the Class Members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the Account Agreement, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

79.     Defendant breached the express and implied terms of the Account Agreement and Fee Schedule by, *inter alia*, assessing multiple NSF fees for the same electronic item, or an NSF fee followed by an overdraft fee, and by assessing overdraft or NSF fees when there was enough money in the account to cover  the transaction at issue.

80.     As a proximate result of Defendant's breaches, Plaintiff and the Class Members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer

below.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

81.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

82.     Plaintiff and each of the Class Members entered into contracts with Defendant covering the subject of overdraft and NSF transactions, which has been identified herein as the Account Agreement contract which covers overdraft fees and NSF fees, as well as the Fee Schedule as a related document.  The contracts were drafted by and are binding upon Defendant.

83.     In the contracts, Glens Falls promised that it would only assess "a fee" (singular) when it determined a member did not have enough money in his or her account to cover an "item," not multiple NSF "fees" for the same "item." In the Fee Schedule it stated the NSF fee would be "per item," not "per each presentment of item."  Defendant also promised that it would only assess overdraft or NSF fees when the balance would go below zero, and nowhere contracted that it would deduct pending debit card transactions from the real balance which was actually in the account.

84.     Further, good faith is an element of every contract.  Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

85.     The material terms of the contracts therefore included the implied covenant of

good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class Members' rights and benefits under the contracts.

86.     Plaintiff and the Class Members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

87.     Defendant breached the implied covenant of good faith and fair dealing based, *inter alia*, on its practices of assessing multiple fees for the same electronic item, and of assessing NSF or overdraft fees when there was enough money in the account to cover the transaction.  Defendant could easily have avoided acting in this manner by simply changing the programing in its software to  charge only an NSF fee "per item" as its own Fee Schedule stated it would do, and to charge overdraft fees and NSF fees only when there really was a "negative balance" as its account agreement stated.  Instead, Defendant unilaterally elected to and did program its software to create accounting gimmicks which would maximize its overdraft and NSF fees.  In so doing, and in implementing its overdraft and NSF fee programs for the purpose of increasing and maximizing overdraft fees, Defendant executed its contractual obligations in bad faith, depriving Plaintiff and the Class Members of the full benefit of the contracts.

88.     As a proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class Members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

### THIRD CAUSE OF ACTION
### (Unjust Enrichment/Restitution)

89.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

90.     As a result of the wrongful misconduct alleged above, Defendant unjustly received millions of dollars in overdraft and NSF fees.

91.     Because Plaintiff and the Class Members paid the erroneous overdraft and NSF fees and repeat NSF fees assessed by Defendant, Plaintiff and the Class Members have conferred a benefit on Defendant, albeit undeservingly.  Defendant has knowledge of these benefits, as well as the wrongful circumstances under which the moneys were conveyed, and yet has voluntarily accepted and retained the benefit conferred.  Should it be allowed to retain such funds, Defendant would be unjustly enriched.  Therefore, Plaintiff and the Class Members seek relief as set forth in the Prayer below.

## FOURTH CAUSE OF ACTION
### (Money Had and Received)

92.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

93.     Defendant has obtained money from Plaintiff and the Class Members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

94.     As a result, Defendant has in its possession money which, in equity, belongs to Plaintiff and the Class Members, and thus, this money should be refunded to Plaintiff and the Class Members.  Therefore, Plaintiff and the Class Members seek relief as set forth in the Prayer below.

## FIFITH CAUSE OF ACTION

**(For Violation of New York General Business Law § 349)**

95.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

96.     By the actions alleged above, Defendant has engaged in deceptive acts or practices against Plaintiff and the Class members in violation of New York General Business Law § 349 ("GBL").

97.     Defendant has engaged in at least two distinct practices which violate the GBL.  Defendant stated it would only charge overdraft or NSF fees against its customers when their accounts contained less money in them than was called for by a given transaction.  In reality, Defendant charged Plaintiff and the Class Members overdraft and NSF fees when they had enough money in their accounts to pay for a given transaction.  Defendant also stated that it would only charge "an" NSF fee (singular) "per item" but charged multiple NSF fees, or an NSF fee followed by an overdraft fee, for the same "item", charging it "per each presentment of item" rather than "per item."

98.      These practices were deceptive because, *inter alia*, Defendant promised Plaintiffs and the Class members that it would only assess overdraft or NSF fees where the transaction at issue exceeded the actual amount of money in the customer's account, but instead charged fees when the account contained enough money to pay for the transaction in question.  These practices also were deceptive because Defendant promised it would only charge a singular "fee" "per item."  These practices caused harm in that Defendant imposed fees on members when such fees should not have been imposed.

99.     The practices described in this cause of action were consumer-oriented. Defendant issued its Account Agreement and Fee Schedule to all members of the public

seeking to become customers of Defendant.  Further, the contracts were made available to the public on Defendant's website.

100.    Plaintiffs suffered harm from these practices when they were assessed wrongful overdraft and NSF fees.

101.    Under § 349(h) Plaintiffs and the Class are entitled to damages and other relief in a form and amount to be determined by a court of law.

## PRAYER

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1.    For an order certifying this action as a class action;

2.    For compensatory damages on all applicable claims and in an amount to be proven at trial;

3.    For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4.    For statutory damages;

5.    For treble damages;

6.    For an order enjoining the wrongful conduct alleged herein;

7.    For costs;

8.    For pre-judgment and post-judgment interest as provided by law;

9.    For attorneys' fees under New York General Business Law § 349, the common fund doctrine, and all other applicable law; and,

10.    For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class Members demand a trial by jury on all issues so triable.

Dated: March 17, 2021                     Respectfully submitted,

                                               **CHERUNDOLO LAW FIRM, PLLC**

BY:    s/ *John C. Cherundolo*
                John Cherundolo
                Bar Roll No. 101339
                J. Patrick Lannon
                Bar Roll No. 516843
                AXA Tower I, 15th Floor
                100 Madison Street
                Syracuse, New York 13202
                Telephone (315) 449-9500
                Facsimile (315) 449-9804
                jcherundolo@cherundololawfirm.com
                plannon@cherundololawfirm.com


                **THE KICK LAW FIRM, APC**
                Taras Kick, CA Bar No. 143379
                Taras@kicklawfirm.com
                THE KICK LAW FIRM, APC
                815 Moraga Drive
                Los Angeles, California 90049
                Telephone: (310) 395-2988
                Facsimile: (310) 395-2088
                Taras@Kicklawfirm.com


                **WILENTZ, GOLDMAN & SPITZER, P.A.**
                Kevin P. Roddy – NYSBA # 652585
                90 Woodbridge Center Drive, Suite 900
                Woodbridge, NJ  07095
                Telephone:  (732) 636-8000
                Facsimile:  (732) 726-6686
                E-mail:  kroddy@wilentz.com


                Attorneys for Plaintiff Daphne Richard and the
                Putative Class